# EXHIBIT

# Q

12/8/2017

Ditech Financial, LLC
PO Box 6176
Rapid City, SD 57709-6176

Via USPS 9405503699300144426697

RE: Loan No: 38461075
NOTICE OF ERROR/REQUEST FOR INFORMATION

To Whom It May Concern:

Between the dates of December 23, 2016 and January 19, 2017, I received nine large packages of completely useless and redundant information from Shea Anderson when I specifically requested copies of amortization schedules, recordings and transcripts of telephone conversations between Ditech and myself, and copies of the QWRS that I've sent in, and a copy of my December 2016 statement. With the exception of most of the QWRs, I did not receive the telephone recordings, transcripts, The December 2016 statement, or page two from the QWR sent in on November 8, 2016. Ms. Anderson erroneously claimed the telephone recordings and transcripts were proprietary and confidential even when provided with the CFPB's interpretation of Regulation X § 1024.36(d)(1)(ii). Instead, she resent me at least 14 copies of my HAMP modification agreement and five copies of my payment history. Every package that has been sent to me is and intact and preserved to show the completely disorganized manner in which it was sent. It's beyond ridiculous. In fact, it is reckless and has wasted hours upon hours of my time.

The following notice of errors, requests for information and documents do not constitute all the errors that I've found or all the information or documents that I may require in the future. This is only a brief list of current issues that need immediate attention and documents that I require now while I continue **my** investigation and audit the servicing of my loan. These documents should come directly to me and not my attorney although Ditech may send copies to my attorney if it so desires.

**Reg. X, 12 C.F.R. §§ 1024.35(e)(1)** requires a servicer to conduct a reasonable investigation and provide the borrower with a <u>written notification that includes a statement that the servicer has determined that</u> **no error occurred,** <u>a statement of the reason or reasons for this determination,</u> a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

**Reg. X, 12 C.F.R. § 1024.36(e)(4)** states that a servicer shall provide to the borrower, at no charge, copies of documents and information relied upon by the servicer in making its determination that no error occurred <u>**within 15 days**</u> (excluding legal public holidays, Saturdays, and Sundays) of receiving the borrower's request for such documents. A servicer is not required to provide documents relied upon that constitute confidential, proprietary or privileged information. If a servicer withholds documents relied upon because it has determined that such documents constitute confidential, proprietary or privileged information, the servicer must notify the borrower of its determination in writing within 15 days (excluding legal public holidays, Saturdays, and Sundays) of receipt of the borrower's request for such documents.

1

**1. REQUEST FOR INFORMATION AND DOCUMENTS - LTV**
Attached you will find a document called ESCROW WAIVER WORKSHEET. It's dated 10/24/16. There is a figure next to LTV which I've circled and highlighted for your review that reads 70.9%. My principle balance as of June 1, 2016 was $119,502.94. My balance on October 24, 2016 was $117,804.65. That's a difference of $1,698.29. Please offer an explanation as to how my loan went from 78% LTV to 70.97% within 5 months when the principle balance was only reduced by $1698.29.

**2. REQUEST FOR INFORMATION AND DOCUMENTS - LTV**
Attached you will find a document called FNMA MI Cancel Request Review. It is dated 9/3/2015. Under "Application" you will read that it says Rate type – Variable. **This is NEW information I'm providing to Ditech.** I've circled it and highlighted it for your review. Please provide the date when my LTV reached 78% and the corresponding document(s) to support that date. The previous documents provided, i.e., a copy of Mortgage Insurance Disclosure from 2007, no longer applies to my loan because it is not a fixed rate. Note this request cannot be considered "duplicative" since the information previously provided was contradictory, insufficient, or plain out wrong, therefore I'm requesting this information again and based on this new information provided.

**3. REQUEST FOR INFORMATION – UNEARNED PREMIUMS**
In light of the fact that my loan is a variable rate loan and I've provided new information to support that with the FNMA MI Cancel Request Review, please advise if the check in the amount of $26.71 for unearned PMI premiums is the right or wrong amount. If Ditech concludes it is the right amount, please provide an explanation as to how it is right and supporting any document(s.) If Ditech concludes it is the wrong amount, please send a check for the correct amount of unearned premiums immediately along with supporting documents as to how that amount was calculated. Please note that if Ditech states that it did not error in calculating the amount of unearned premiums, that it must provide supporting documents under **Reg. X, 12 C.F.R. § 1024.36(e)(4)** by January 2, 2018.

**4. REQUEST FOR INFORMATION – TELEPHONE NUMBERS**
Please provide names and contact numbers of relatives and friends of mine that Ditech has on file and the dates, times and reasons these people were last contacted on my behalf.

**5. REQUEST FOR INFORMATION – TELEPHONE RECORDS**
Please provide all telephone transcripts/records between myself and Ditech.

**6. REQUEST FOR INFORMATION – AMORITAZTION**
Variable rate loans re-amortize each time the rate changes. Based on my HAMP modification documents, please list the dates that my loan was re-amortized and the loan balance as of those dates.

**7. REQUEST FOR INFORMATION – AMORITAZTION SCHEDULE**
Please provide a copy of my most recent amortization schedule.

**8. REQUEST FOR INFORMATION/NOTICE OF ERROR - UNAPPLIED FUNDS**

I recreated the payment history provided to me by Ditech in my personal Quickbooks, breaking down each and every payment made and allocating the payments toward principle, escrow, insurance, late fees (If applicable) and into a UAF account (if applicable.) As you can see by the attached report titled Ditech Current Balance, my balance matches Ditech's balance as shown on the 11/16/17 billing statement. The balance and the dates are circled and highlighted. According to my report Ditech UAF account that I've also attached, there is $28.99 that I paid toward principle went into a UAF account and was never applied. In fact, it seem to have disappeared into thin air. The report shows each date that I overpaid and the memo states whether or not the UAF was applied to principle. Please explain why the funds where never applied to principle and when the funds will be applied and how Ditech plans to handle the interest that was miscalculated each month over the years as a result of these errors.

**9. REQUEST FOR INFORMATION/NOTICE OF ERROR/INSUFFICIENT RESPONSE– ESCROW CANCELLATION**

On November 9, 2016 Ms. Anderson stated "Records indicate that your request to cancel escrow for your account was denied. As a condition of the HAMP agreement your loan is required to be escrowed. Therefore, your account is not eligible to have escrow requirement waived. Escrow will remain for the life of the loan." While I'm not denying that Ditech denied my request, I'm disputing the validity of the statement made by Ms. Anderson. In fact, page three, Section 4. D. of the HAMP agreement very clearly states thee following: "I shall pay the Lender the Funds for Escrow Items **unless Lender waives my obligation** to pay the Funds for any or all Escrow Items. Lender **may waive my obligation** to pay to Lender Funds for any or all Escrow Items at any time." I've attached this portion of the HAMP Modification Agreement highlighted for your review.

In light of the fact that I've been provided false information over and over by Ms. Anderson and the gross inadequacies I've suffered in the servicing of my loan in general, I ask that my escrow be cancelled immediately so that I may effectively manage it myself.

**10. NOTICE OF ERROR – EMAIL ADDRESS**

My email address needs to be changed from tmstclaire@comcast.net to tracistclaire@gmail.com.

Regards,

Traci St. Claire

Enclosures
Escrow Waiver Worksheet
FNMA MI Cancel Request Review
Ditech Current Balance Report
Ditech Billing Statement 11/16/17
Ditech UAF Account
Page 3 of 6 HAMP Modification Agreement

3



**ESCROW WAIVER WORKSHEET**

DATE: MM/DD/YYYY

| | |
|---|---|
| LOAN NUMBER | LOAN TYPE (P190) |
| | LOAN PURPOSE (MAS1/PRP1) |
| WRITTEN REQUEST REC'D | LOAN TYPE REQUIRMENTS: |
| | FHA - CANNOT CANCEL |
| | RHS - CANNOT CANCEL |
| ESCROW BALANCE (P190) | |
| (ESC ADV CANNOT CANCEL) | STATE |
| (Enter Esc Adv / Shortage as a negative value) | SPECIAL STATE REQUIRMENTS |
| | CA - LTV < 90% |
| PRINCIPLE BALANCE | PURCHASE PRICE |
| mipc | ORIGINAL APPRAISAL VALUE |
| (LTV (MIPC)(LTV<80%) | 70.97% |
| DLQ OVER 30 DAYS (DLQ4) | |
| LAST 12 MONTHS | |
| MODD (EXISTS Y/N) | MODH (EXISTS Y/N) |
| | NIS CHECKED FOR MOD DOCS |
| | Loan Mod Exists. |
| | Cancellation Denied |

**What is requested to be cancelled?**

| | |
|---|---|
| ESCROW WAIVER CD/DATE | HI PRC (Y or N) - MAS1/PRP1 |
| (MAS1/PRP1) | |
| Update only of complete escrow being | HPML NOTE DATE (mm/dd/yyyy) |
| cancelled. Do not fill for partial cancellation | |
| | CODE   DATE | |

| | |
|---|---|
| DENIED DATE: | APPROVED DATE: |
| REASON: v) Loan Mod Exists | CANCELLED DATE: |
| | 7 BUSINESS DAYS AFTER APPROVED |
| CLEAR PCH2/ESCR | CHANGE BILL CODE HA22 |
| | ONLY IF APPROVED |
| CHANGE BILL CODE TAX2 | ORDER NEW BILL STMT |
| | ONLY IF APPROVED |
| WORSHEET SCANNED TO NIS | ORDER S/Y HISTORY MAS1/PYT1 |
| | Enter INIT Date as today, code 'P' |

| TASK OPENED | LETTER ORDERED |
|---|---|
| INSCHG | ES222 DENIAL |
| CLOGEN | ES032 Approved TAX |
| TAXMSC | ES033 Approved INSURANCE |
| | ES034 Approved for ESCROW |

*USED WHEN PART OF ESCROW IS CANCELLED

COMMENTS
BI requested escrow cancellation for Both Taxes & Insurance. Request couldn't be processed because

v) Loan Mod Exists

| FNMA MI Cancel Request Review | | Loan number: | **68913177** |
|---|---|---|---|

| Date Written Cancellation Request received (date or fax stamp): | 9/3/2015 | | |
|---|---|---|---|
| | | Customer's Name: | Traci M St Claire |

(All cancel requests must be must be a written request and completed within 30 days of the request received date)

| Review Date | | | |
|---|---|---|---|
| GTA screen | | PMI certificate | 11404013 |
| Is this a FNMA loan? | Yes | PMI company | United Guaranty |
| State | GA | PMI TYPE | PMIBR |
| Late Fees | No | If CA, NY, or WA, please use specific State MI Cancel review sheet |
| Late Payments? | No | 30 day lates within past 12 month, and 60 day lates within 24 months |
| Property type | Single Family | Double-check with appraisal |
| Principal Balance | $ 127,456.35 | |
| Corporate Advances | $ - | (include REIOCD's: 700, 701, 702, 703, 706, 720, 721, 722, 723, 724, 726, 727) |
| Total owing | $127,456.35 | |

| Note | | |
|---|---|---|
| Loan Amount | $151,914.95 | |
| Payment | $ 742.34 | |
| First Payment | 5/1/2010 | |
| Interest Rate | 3.750% | |
| Cash Date | 6/22/2007 | If prior to 7/29/99, follow the investment rules same as Investment |
| Maturity Date | 7/1/2037 | |
| Midpoint | 8/1/2022 | |
| Modified | **YES - 5/1/2010** | If Yes, print off modification from NIS to use in Amort Schedule |

| Appraisal and Hud | | |
|---|---|---|
| Appraised Value | $ 166,000.00 | |
| Sales Price | $ - | If refi, N/A question |
| MOD Value | $ 146,292.00 | 12/28/2009 LM_Reporting_Extract Value |
| Original Value | $ 146,292.00 | Lessor of appraised value and sale price |

| BK Status | | |
|---|---|---|
| Bankruptcy Status | No BK Status | |

| Application | | |
|---|---|---|
| Use | Primary Residence | If ARM, use all rate adjustments for past payment and use current rate for future |
| Rate type | Variable | payments |
| Use of Mortgage | Refinance | |

| Amortization Schedule | | |
|---|---|---|
| Current Actual LTV | 87.12% | Total Owing divided by Original Value |
| Non-investment Single Family | | Notes: |
| for 80%= | 12/1/2019 | |
| Date for 78%= | 8/1/2020 | |
| Date for 75% = | 8/1/2021 | |
| Date for 70% | 3/1/2023 | |
| Date for 60% | 12/1/2025 | |

If all requirements are met, see the approval addendum which outlines additional criteria to be consider prior to cancelling MI.

Denied - see page 2   Approved - see approval addendum

**8:54 AM**

**12/08/17**

**Accrual Basis**

# Ditech
# Current Balance
## All Transactions

| Type | Date | Memo | Clr | Amount | Balance |
|------|------|------|-----|--------|---------|
| **Ditech / Greentree** | | | | | |
| General Journal | 05/16/2007 | Applied Principle | | 0.00 | 0.00 |
| General Journal | 05/20/2013 | Transferred Principle Balance from Bank of America | | 138,177.38 | 138,177.38 |
| Check | 06/14/2013 | | | -310.54 | 137,866.84 |
| Check | 06/14/2013 | Principle Overpayment - Applied to Balance | | -2.06 | 137,864.78 |
| Check | 07/12/2013 | | | -311.51 | 137,553.27 |
| Check | 08/09/2013 | | | -312.49 | 137,240.78 |
| Check | 09/12/2013 | | | -313.46 | 136,927.32 |
| Check | 10/11/2013 | | | -314.44 | 136,612.88 |
| Check | 11/08/2013 | | | -315.42 | 136,297.46 |
| Check | 12/03/2013 | | | -316.41 | 135,981.05 |
| Check | 12/31/2013 | | | -317.40 | 135,663.65 |
| General Journal | 12/31/2013 | HAMP Incentive Payment | | -1,000.00 | 134,663.65 |
| General Journal | 12/31/2013 | Principle Overpayment - Applied to Balance | | -0.22 | 134,663.43 |
| Check | 03/05/2014 | | | -321.52 | 134,341.91 |
| Check | 04/09/2014 | | | -323.54 | 134,018.37 |
| General Journal | 04/09/2014 | Principle Overpayment Applied to Balance | | -1.04 | 134,017.33 |
| Check | 05/06/2014 | PROBLEMS | | -323.54 | 133,693.79 |
| Check | 05/07/2014 | Delta Mistake - Adj. made to Balance | | -327.94 | 133,365.85 |
| Check | 06/04/2014 | | | -325.57 | 133,040.28 |
| Check | 06/04/2014 | Principle Overpayment - Applied to Balance | | -3.39 | 133,036.89 |
| Check | 07/16/2014 | | | -326.60 | 132,710.29 |
| Check | 07/16/2014 | Principle Overpayment - Applied to Balance | | -3.39 | 132,706.90 |
| Check | 08/15/2014 | | | -327.63 | 132,379.27 |
| Check | 08/15/2014 | Principle Overpayment - Applied to Balance | | -3.39 | 132,375.88 |
| Check | 09/16/2014 | | | -328.67 | 132,047.21 |
| Check | 10/17/2014 | | | -329.69 | 131,717.52 |
| Check | 11/17/2014 | | | -330.72 | 131,386.80 |
| Check | 12/17/2014 | | | -331.76 | 131,055.04 |
| General Journal | 12/31/2014 | Pay for Performance | | -1,000.00 | 130,055.04 |
| Check | 01/16/2015 | | | -333.02 | 129,722.02 |
| General Journal | 01/16/2015 | Principle Overpayment - Applied to Balance | | -16.95 | 129,705.07 |
| Check | 02/17/2015 | | | -337.01 | 129,368.06 |
| Check | 03/17/2015 | | | -338.06 | 129,030.00 |
| Check | 04/20/2015 | | | -339.12 | 128,690.88 |
| Check | 05/15/2015 | | | -306.18 | 128,384.70 |
| Check | 05/15/2015 | ??? | | -1.75 | 128,382.95 |
| Check | 06/17/2015 | | | -307.40 | 128,075.55 |
| Check | 07/17/2015 | | | -308.61 | 127,766.94 |
| Check | 08/13/2015 | | | -309.84 | 127,457.10 |
| General Journal | 08/21/2015 | Principle Overpayment - Applied to Balance | | -0.75 | 127,456.35 |
| Check | 09/17/2015 | | | -311.07 | 127,145.28 |
| Check | 10/16/2015 | | | -312.30 | 126,832.98 |
| General Journal | 10/16/2015 | Principle Overpayment - Applied to Balance | | -0.50 | 126,832.48 |
| Check | 11/17/2015 | | | -313.53 | 126,518.95 |
| Check | 12/17/2015 | | | -314.78 | 126,204.17 |
| Check | 01/15/2016 | | | -316.02 | 125,888.15 |
| General Journal | 01/15/2016 | Principle Overpayment - Applied to Balance | | -0.75 | 125,887.40 |
| General Journal | 02/03/2016 | Pay for Performance 2/3/16 | | -5,000.00 | 120,887.40 |
| Check | 02/17/2016 | | | -337.20 | 120,550.20 |
| General Journal | 02/18/2016 | Principle Overpayment - Applied to Balance | | -34.11 | 120,516.09 |
| Check | 03/11/2016 | | | -338.54 | 120,177.55 |
| Check | 04/18/2016 | | | -339.88 | 119,837.67 |
| Check | 05/17/2016 | | | -334.73 | 119,502.94 |
| General Journal | 06/04/2016 | Applied from UAF Account - Over Due | | -4.25 | 119,498.69 |
| Check | 06/17/2016 | | | -336.14 | 119,162.55 |
| Check | 07/18/2016 | | | -337.36 | 118,825.19 |
| Check | 08/17/2016 | | | -338.77 | 118,486.42 |
| Check | 09/19/2016 | Includes Extra Principle of .08 | | -340.18 | 118,146.24 |
| Check | 10/17/2016 | | | -341.59 | 117,804.65 |
| Check | 11/17/2016 | | | -343.02 | 117,461.63 |
| Check | 12/19/2016 | Includes Extra Principle of .08 | | -344.45 | 117,117.18 |
| Check | 01/18/2017 | | | -346.69 | 116,770.49 |
| Check | 02/21/2017 | | | -278.14 | 116,492.35 |
| Check | 03/17/2017 | | | -285.28 | 116,207.07 |
| Check | 04/17/2017 | | | -276.46 | 115,930.61 |
| Check | 05/17/2017 | | | -277.64 | 115,652.97 |
| Check | 06/19/2017 | | | -287.83 | 115,365.14 |

**8:54 AM**

**12/08/17**

**Accrual Basis**

# Ditech
## Current Balance
### All Transactions

| Type | Date | Memo | Clr | Amount | Balance |
|------|------|------|-----|--------|---------|
| Check | 07/17/2017 | | | -289.03 | 115,076.11 |
| Check | 08/17/2017 | | | -290.24 | 114,785.87 |
| Check | 09/18/2017 | | | -291.45 | 114,494.42 |
| Check | 10/17/2017 | | | -283.60 | 114,210.82 |
| Check | 11/17/2017 | | | -284.78 | 113,926.04 |
| **Total Ditech / Greentree** | | | | 113,926.04 | 113,926.04 |
| **TOTAL** | | | | **113,926.04** | **113,926.04** |

REPRESENTATION OF PRINTED DOCUMENT

 **ditech.**
PO Box 6172, Rapid City, SD 57700-6172

# BILLING STATEMENT

| Statement Date | Due Date | **Amount Due** |
|---|---|---|
| 11/16/2017 | 12/01/2017 | **$930.94** |

If payment is received after 12/16/2017,
a $38.03 late fee will be charged

2-776-10920-0050812-001-1-000-000-000-000

░░░░░░░░░░E
345 W HANCOCK AVE
ATHENS GA 30601-2595

AutoPay is Free Online at Ditech.com

Mail your payment to
PO Box 94710
Palatine, IL 60094-4710

Call 1-800-643-0202
Monday - Friday, 7a.m. - 8 p.m. CST
Saturday, 7a.m. - 1 p.m. CST

## Account Information

| | |
|---|---|
| Loan Number | 0028░░░░░ |
| Principal Balance † | $413,926.02 |
| Escrow Balance | -$140.46 |
| Interest Rate | 5.000% |
| Next Interest Rate Reset | N/A |
| Interest Type | Actuarial |
| Prepayment Penalty | No |

Property Address:
8390 EMERALD POINTE LN
GAINESVILLE GA 30506

† This is not your payoff amount. Please login to
MyAccount at ditech.com for a payoff figure.

## Past Payments Breakdown

| Since Last Statement/Month | |
|---|---|
| Principal | $284.76 |
| Interest | $475.68 |
| Escrow (Tax & Insurance) | $179.34 |
| Total Fees and Charges | $0.00 |
| Funds in Suspense | $0.00 |
| **Total Paid** | **$940.00** |

| Year to Date | |
|---|---|
| Principal | $3,191.16 |
| Interest | $5,300.42 |
| Escrow (Tax & Insurance) | $1,916.40 |
| Total Fees and Charges | $0.00 |
| Funds in Suspense | $0.00 |
| **Total  Paid Year to Date** | **$10,407.98** |

## Explanation of Amount Due

| | |
|---|---|
| Principal | $285.97 |
| Interest | $474.69 |
| Escrow (Tax & Insurance) | $170.28 |
| Regular Monthly Payment | $930.94 |
| Total New Fees and Charges | $0.00 |
| Past Due Amount | $0.00 |

## Transaction Activity Since Last Statement

| Date | Description | Charges | Payments |
|---|---|---|---|
| 11/16/17 | Payments | $0.00 | $940.00 |

**Total Amount Due: $930.94**

**Statements safe?**
**Are you protecting
your statements and
personal documents?**

Online Billing is faster, safer, and
free! ditech.com/online-billing

## Important Messages (More information on the Back)

PARTIAL PAYMENTS: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account. If you pay the balance of a
partial payment, the funds will then be applied to your mortgage.



---

✂ PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT ✂

TRACI M ST CLAIRE
345 W HANCOCK AVE
ATHENS GA 30601-2595

☐ Check box for address
changes on reverse side.

Make checks payable to Ditech Financial.

| Loan Number | Statement Date | Due Date | **Amount Due** |
|---|---|---|---|
| ░░░░░░░ | 11/16/2017 | 12/01/2017 | **$930.94** |

If payment is received after 12/16/2017,
a $38.03 late fee will be charged

| Amount Due | $ | , | . |
|---|---|---|---|
| Additional Escrow | $ | , | . |
| Additional Late | $ | , | . |
| Additional Principal | $ | , | . |
| Total Amount Enclosed | $ | , | . |

Ditech
PO Box 94710
Palatine, IL 60094-4710

03846107 5   00093094   0000093094

**Ditech**

**UAF Account**

All Transactions

8:57 AM

12/08/17

Accrual Basis

| Date | Num | Name | Memo | Amount | Balance |
|------|-----|------|------|--------|---------|
| **UAF - Greentree/Ditech** | | | | | |
| 05/16/2007 | | | Applied Principle | 0.00 | 0.00 |
| 12/31/2013 | | Green Tree | Principle Overpayment - Applied to Balance | -0.22 | -0.22 |
| 12/31/2013 | | Green Tree | | -0.54 | -0.76 |
| 04/09/2014 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 2.63 |
| 04/09/2014 | | Green Tree | Principle Overpayment - Applied to Balance | -1.04 | 1.59 |
| 05/06/2014 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 4.98 |
| 05/06/2014 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 1.01 | 5.99 |
| 09/16/2014 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 9.38 |
| 10/17/2014 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 12.77 |
| 11/17/2014 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 16.16 |
| 12/17/2014 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 19.55 |
| 01/16/2015 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 22.94 |
| 01/16/2015 | | Green Tree | Principle Overpayment - Applied to Balance | -16.95 | 5.99 |
| 02/17/2015 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 9.38 |
| 03/17/2015 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 3.39 | 12.77 |
| 04/20/2015 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 47.49 | 60.26 |
| 05/15/2015 | | Green Tree | Principle Overpayment - Applied to Balance | -17.50 | 42.76 |
| 06/17/2015 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.01 |
| 07/17/2015 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.26 |
| 08/13/2015 | | Green Tree | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.51 |
| 08/21/2015 | | Green Tree | Principle Overpayment - Applied to Balance | -0.75 | 42.76 |
| 09/17/2015 | | Ditech | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.01 |
| 10/16/2015 | | Ditech | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.26 |
| 10/16/2015 | | Ditech | Principle Overpayment - Applied to Balance | -0.50 | 42.76 |
| 11/17/2015 | | Ditech | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.01 |
| 12/17/2015 | | Ditech | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.26 |
| 01/15/2016 | | Ditech | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.51 |
| 01/15/2016 | | Ditech | Principle Overpayment - Applied to Balance | -0.75 | 42.76 |
| 02/17/2016 | | Ditech | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 43.01 |
| 02/18/2016 | | Ditech | Principle Overpayment - Applied to Balance | -34.11 | 8.90 |
| 03/11/2016 | | Ditech | Principle Overpayment - NOT APPLIED TO BALANCE | 0.25 | 9.15 |
| 04/18/2016 | 2 | Ditech | Principle Overpayment - NOT APPLIED TO BALANCE | 24.07 | 33.22 |
| 06/04/2016 | | Ditech | Principle Overpayment - Applied to Balance | -4.25 | 28.97 |
| 04/17/2017 | | Ditech | This was made online toward Principle - They charged ... | 0.02 | 28.99 |
| Total UAF - Greentree/Ditech | | | | 28.99 | 28.99 |
| **TOTAL** | | | | **28.99** | **28.99** |



**Ditech Financial LLC**
P.O. Box 6172
Rapid City, SD 57709-6172
T: (800) 643-0202
F: (866) 870-9919
ditech.com

December 22, 2017

TRACI M ST CLAIRE
JAMES HURT JR
345 W HANCOCK AVE
ATHENS  GA 30601

RE: Ditech Financial LLC ("Ditech")
    Account Number: ████████

Dear Traci M. St Claire:

This letter is in response to your Qualified Written Request received by Ditech regarding the above-referenced account number.

The purpose of a qualified written request is to receive information, clarification, or corrective action regarding the problems and disputes with the servicing of an account. Any information requested outside the scope of RESPA, or which is proprietary, confidential, burdensome or immaterial to the servicing of the account, will not be provided.

Please be advised, information related to internal servicing notes and telephone transcripts are considered proprietary and confidential; therefore, this type of information will not be provided to you. Additionally, please be advised that all responses to qualified written requests received from you were fully responded to within the requirements of the Real Estate Settlement Procedures Act ("RESPA"). There has been no error in our response time or the documentation that has been provided to you.

As we have responded to your concerns on July 09, 2015, September 21, 2015, October 01, 2015, October 09, 2015, November 13, 2015, January 22, 2016, February 11, 2016, May 06, 2016, May, 19, 2016, June 13, 2016, July 21, 2016, September 21, 2016, October 10, 2016, November 09, 2016, December 19, 2016 and January 13, 2017 and we have not received any documentation that provides support of your dispute of the information provided, we stand by our previous responses and our position has not changed.

In response to your specific points, please be advised of the following:

1.) Please be advised, when the account was reviewed for the cancellation of escrow the calculations completed on October 24, 2016, were completed using an appraised value. When the Private Mortgage Insurance (PMI) was reviewed for removal, the original loan value of $147,500.00 was used. Therefore, the calculations indicated different loan to value (LTV) ratios. This difference did not have any bearing on the previous PMI cancellation, effective June 01, 2016.

2.) As previously communicated to you, your loan was modified in 2010. That modification provide you with a step rate interest increase. The account is not considered a variable rate because the interest rate is not dependent on a current index and the amortization of the loan is not adjusted as the result of future unknown changes in the interest rate. Per the terms of your Home Affordable Modification Agreement (HAMP), effective May 01, 2010, the interest rate for the account was 3.750% from April 01, 2010 through March 31, 2015, 4.750% from April 01, 2015 through March 31, 2016, and 5.000% from April 01, 2016 through the end of the loan.

Additionally, as previously communicated to you, the modification changed the LTV and the PMI cancellation date, did not require a new PMI disclosure to be provided to you, and PMI termination is a federally regulated process. Completion of a loan modification does not change the legal requirements that must be met in order to qualify an account for the cancellation of PMI. Additionally, please be advised, as previously communicated to you, as the result of the modification of your loan, the automatic termination date of PMI had been changed to January 2020; therefore, any cancellation of PMI prior to January 2020, was dependent on receiving a signed written request to cancel the PMI, which included an authorization for an appraisal to be completed and the cost of the appraisal to be assessed to the account. As this matter has been fully explained to you on multiple occasions and we stand by our prior responses, additional calculations of the loan's LTV will not be completed.



EQUAL HOUSING
**LENDER**
LTR-199

Correspondence - Response Letter, 11/17/2015

3.) Please be advised, the PMI cancellation was approved in August 2016, but was effective June 01, 2016. Therefore, as PMI is paid in arrears, the May PMI payment was for the April 2016 PMI due, the June PMI payment was for the May 2016 PMI due, and the July 2016 PMI payment was for the June 2016 PMI due. Only the June 2016 PMI payment was eligible for reimbursement and was refunded to you in a check issued on August 03, 2016. There is no additional refund due to you.

4.) If a customer cannot be located, attempts may be made to contact a third party to determine the location of the customer. Account information is not released to any third parties without the customer's authorization. Please be advised, information related to any third party who may have been contacted in an attempt to contact you is considered to be confidential and immaterial to the servicing of the account; therefore, this type of information will not be provided to you.

5.) As previously communicated to you, telephone records and/or transcripts of recordings are considered proprietary and confidential; therefore, this type of information will not be provided to you.

6. & 7.) Please be advised, an amortization schedule is created at a fixed point in time. Any deviation from the anticipated payments indicated within that amortization schedule that occur after the date the schedule was created will change any subsequently created amortization schedule. Therefore, amortization schedules are created to show the anticipated loan balances going forward and a payment history is used to illustrate how transactions affected the principal balance in the past.

As indicated on the enclosed payment history, per the terms of the HAMP, the principal balance of the account was $151,914.95, as of date the modification's terms were applied to the account. On March 31, 2015, the principal balance of the account was $129,030.00, on March 31, 2016, the principal balance of the account was $120,177.55. A payment history which included a running principal balance has been provided to you on multiple occasions and evidenced the principal balance at any time during the life of the loan. A current payment history and amortization schedule are enclosed for your review.

8.) Pursuant to your correspondence, a review of the account's payment history finds that all funds have been credited to the account and the account currently has a $0.00 balance in unapplied funds. Please note, we are unable to determine the exact payment for which you reference the amount of $28.99 being misapplied. Our system does not use color imaging and any highlighted information is not visible in reviewing correspondence. Please review the enclosed payment history. If you believe a payment was made but not applied to the account and wish us to research the missing payment, we will require proof of the payment. Proof of a payment includes one or more of the following: the front and back copy of the money order or check, an un-altered copy of your bank statement for the period the check was processed or receipts for Western Union, Money Gram, etc. Please send the additional information to the address on this response or the fax number (866) 870-9919.

9.) Please be advised, an account that has been modified, pursuant to the owner/investor's servicing guidelines, is no longer eligible to have the escrow requirement removed. The requirement for the loan to be escrowed is permanent and will not be waived. This is indicated with the terms of the HAMP agreement, in Section D. A copy of your HAMP modification agreement has previously been provided to you. Therefore, as previously communicated to you, your request to remove the escrow requirement for the account is denied.

10.) Pursuant to your request, we have updated your email address. Please note, you may update your email address on our website at www.ditech.com or by contacting our Customer Service Department at the number provided below.

As of the date of this letter, the account is due for the January 01, 2018 payment of $930.94. If there are any further questions or concerns about the account, please contact the account representatives, Tracey L. at (800) 643-0202, extension 23657, or Jason S. at extension 23044.

Our Customer Service Department is also available to answer any questions or concerns and can be reached at (800) 643-0202, Monday – Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT.

Sincerely,

Shea Andersen
Customer Service Correspondence Supervisor

**This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.**
ASWE7jOwRXO

Correspondence - Response Letter, 11/17/2015                                    LTR-199

11:15 12/26/2017

December 23, 2017

Ditech Financial, LLC
PO Box 6176
Rapid City, SD 57709-6176

Via USPS 9405503699300160293822

RE: Loan No: 38461075
QWR/NOTICE OF ERROR/REQUEST FOR INFORMATION – COUNSELOR/SUPERVISOR ESCALATION

To Whom It May Concern:

I woke up on the morning of December 22, 2017 at 2:14 feeling extremely anxious since it's been 10 business days as of the day of this writing and Ditech has not acknowledged that it received my qualified written request. I was hopeful that the new information provided in that letter would mean that the unearned premiums I've requested over and over based on the mistake that Ditech has made in calculating the final termination date of my PMI, be returned to me before the end of the year. I was unable to go back to sleep because I couldn't shut off the anger, worry and frustration in my mind. My stress and frustration is also taking a toll on my husband.

In the event that you sent the acknowledgement letter to my attorney, Jimmy Hurt, Esq., recall in the December 08, 2017 letter that I specifically asked you to send information to me. You may copy Jimmy or copy me, I just want a copy and I want to get it in the time frame that RESPA outlines that I, the borrower, should get it. Just to make myself clear in the off chance that I was not before because these are questions that I'm asking outside of the advice and direction of my attorney.

The following qualified written requests, notices of error and requests for information and documents directly relate to the servicing of my loan and Ditech's answers will go far in helping me to reconcile some of its previous responses.

1.  NOTICE OF ERROR – RESPA REQUIREMENTS
    I sent a QWR dated December 8, 2017 via USPS and the tracking information shows Ditech received it on December 12, 2017. I did not receive the five day acknowledgement as required by RESPA - 12 CFR 1024.35(d). Please advise why I did not receive this acknowledgement.

2.  REQUEST FOR INFORMATION/DOCUMENTS – MONTHLY PAYMENT
    How many times has the amount of my monthly payment changed since my loan was transferred to Green Tree/Ditech and why? What internal process does Ditech use to figure these new payment amounts and what is that process called?

3.  REQUEST FOR INFORMATION/DOCUMENTS – ORIGINAL VALUE
    Please advise if the original value of my home recorded on file at Ditech is $166,000 as my own records indicate. If it's not $166,000 please advise as to what Ditech thinks that it is, the date that it changed, and where this information is located. Also please provide documents supporting Ditech's record.

4.  REQUEST FOR INFORMATION/DOCUMENTS – PRINCIPLE BALANCE
    My records indicate that as of March 09, 2015 my principle balance was $129,368.06. Is that amount correct or incorrect? If incorrect, please provide the balance that Ditech has on record for that date.

On September 21, 2015, Shea Anderson stated the original PMI disclosure was not applicable since my loan had been modified by HAMP and that the date my loan was schedule to reach 78% LTV was 8/1/2020. Yet on October 10, 2016 she writes *"Per the Mortgage Insurance Disclosure signed at the origination of your loan on June 21 , 2007 and the Annual Private Mortgage Insurance Disclosure, last mailed to you on April 7, 2016, "PMI will automatically terminate on the Termination Date, which is the date on which the principal balance of your mortgage, based solely on the initial amortization schedule for your mortgage, is first __scheduled__ to reach 78 percent of the original value of the property securing the mortgage."* On May 6, 2015 Cindy Leete from Ditech's Legal Department, wrote *"according to the terms of my HAMP mod agreement, my loan is scheduled to reach 78% LTV on August 1, 2016."*

My PMI actually cancelled June 1, 2016 which again, is a completely different date than the previous dates given. This is a source of great frustration to me and Ditech's refusal to acknowledge the mistakes, correct them or offer an explanation of the changes/differences in a meaningful way that I can reconcile and make sense of has created much anxiety. In fact, every response by Ditech on the subject has been insufficient and contradictory as to what the Home Owner's Protection states in how automatic termination of my PMI should be handled. This matter remains unsettled.

5. NOTICE OF ERROR/REQUEST FOR INFORMATION/DOCUMENTS
    Please explain the three contradictions in the dates that I've been given regarding when my PMI should automatically terminate and what laws, rules, servicing guides, etc. that Ditech is used to determine the June 1, 2016 cancellation date and why. Once again, the Mortgage Insurance Disclosure provided can't possibly apply if my loan is no longer a fixed rate loan. I have every reason to believe that the HAMP modification did modify my loan from a fixed rate to a step rate or variable rate as indicated on the FNMA MI Cancel Request Review.

In a letter dated November 9, 2016, Shea Anderson wrote *"Please be advised that your HAMP modification agreement is a __fixed interest step rate modification__, with an initial interest rate of 3.750% for the first five years, an interest rate of 4.750% for the sixth year, and a final interest rate of 5.000% for the remaining loan term. The interest rate for your account is 5.000% as stated in the modification agreement."* However on January, 13, 2017, Ms. Anderson sent a package that contained a document called FNMA MI Cancel Request Review of which I provided a copy to Ditech in my QWR dated December 08, 2017. This document is confusing and contradictory to the answer Ms. Anderson provided. In that regard, please advise the following:

6. NOTICE OF ERROR/REQUEST FOR INFORMATION – LOAN RATE TYPE
    Why was I given this contradictory information? What steps is Ditech taking to ensure that I don't receive contradictory information in the future?

In review of the letter sent to me in January 13, 2017 by Shea Anderson, I'm not sure that the beginning balance of late fees are correct. Bank of America, once upon a time, told me that I would have to let my loan default to get a HAMP modification. I know now that is not true. If those late fees are a result of my being mislead by BOA and/or a byproduct of my HAMP modification, then they may have been charged erroneously and are affecting the current balance of my account. That is the reason behind request No. 6. Also please see the attached Servicing Guide that references late fees. It clearly states *"The servicer must waive all late charges, penalties, stop payment fees, or similar charges upon the borrower's conversion to a permanent Fannie Mae HAMP modification."*

7. REQUEST FOR INFORMATION/DOCUMENTS – SERVICING FILE
    I request my entire servicing file as it was transferred from BOA to Ditech along with the dates that it was transferred.

In review of the letter dated January 13, 2017 sent to me by Shea Anderson, more specifically response 8.), I additionally request the following information outlined below.

11:15 12/26/2017

8. NOTICE OF ERROR/REQUEST FOR INFORMATION -

An explanation as to how a conversation between myself and Ditech can technically be considered confidential if I was actually part of the conversation. Also provide a copy of the document used to determine the information was confidential and not required to be furnished under RESPA. This document is due in 15 business days from the date of this letter under RESPA.

In review of the letter sent to me dated January 13, 2017 sent to me by Shea Anderson, more specifically response 9.) the December billing statement **was not enclosed.** I went through that stack more times that I can count and it is simply not there.

REQUEST FOR INFORMATION/DOCUMENTS
9. Copy of my December 2013 billing statement.

Additional information requested that directly relates to the servicing of the loan.

10. REQUEST FOR INFORMATION/DOCUMENTS – SPEEDPAY

In review of the payment history that Ditech sent me, I see that On February 17, 2014, there is an entry for Speedpay. Please explain what this entry means and if I paid additional fees because of this Speedpay entry and to whom. Please also provide a copy of the signed document whereby I agreed to pay those fees.

11. NOTICE OF ERROR/REQUEST FOR INFORMATION/DOCUMENTS – LATE FEE

On April 16, 2016, I was assessed a late fee of $48.78. On April 18, 2016, I paid a late fee of $4.25. On April 23, 2016, $36.53 was waived. On June 4, 2016 $4.25 was reversed. On June 13, 2016 $4.25 was waived.
   a. Please explain the differences between assessed, paid, waived and reversed as it relates to late fees.
   b. Please explain why I was assessed a late fee of $48.78.
   c. Please explain why I paid a late fee of $4.25
   d. Please explain why only $36.53 of the late fee of $48.78 was waived.
   e. Please explain the location of the $4.25 through April 16, 2017 through June 13, 2016.

Unfortunately in light of some of the recent lawsuits filed against Bank of America and especially in light of CFPB vs. Green Tree Servicing, LLC, I have absolutely zero reason to take any statements made by the representatives of Ditech at their word nor do I have any reason to believe that the information previously provided was in good faith and properly investigated otherwise some of these issue would have been resolved by now. Therefore I request a thorough investigation along with honest, substantive and meaningful responses and supporting documents to these inquires.

Regards,

Traci St. Claire
Enclosure: D2-3.2-07: Fannie Mae HAMP Modification

3


HOME LOANS

Ditech Financial LLC
345 St. Peter Street, Suite 1400
Saint Paul, MN 55102
T 651.293.4800
F 651.293.5818
ditech.com

February 26, 2018

**Via U.S. Mail**

Traci St. Claire
████████████ Ln
G████████████ ███1

Re:   Ditech account number:   ████████
      Property address:   ████████████te Ln., Gainesville, GA 30506

Dear Ms. St. Claire:

This responds to your qualified written request ("QWR") dated 12/23/17 which Ditech received on 12/26/17 regarding your account serviced by Ditech.

Ditech maintains it has timely responded to all QWRs received from you, and that the QWRs contain requests that Ditech has previously responded to. In response to your 12/23/17 QWR please see below. To the extent Ditech has already responded to a similar or duplicative request that correspondence will be referred to, and enclosed are copies of those responses (less the supporting documentation attached thereto as those documents were already provided).

1.  NOTICE OF ERROR – RESPA REQUIREMENTS. Ditech understands you are inquiring why you did not receive the five-day acknowledgment letter after Ditech received your 12/23/17 QWR.

    RESPONSE: RESPA provides that the servicer must *provide* an acknowledgement letter within five-days *after* it receives the QWR (excluding legal holidays, Saturdays and Sundays). When you receive acknowledgment letters or response letters is not a RESPA requirement. Ditech received your QWR on 12/26/17, and as such Ditech was required to *provide* an acknowledgment letter no later than 1/3/18. Here, Ditech's counsel (Troutman Sanders) acknowledged the QWR to your attorney (James Hurt) on 1/3/18. As such, no error has occurred.

2.  REQUEST FOR INFORMATION/DOCUMENTS – MONTHLY PAYMENT. Ditech understands you are inquiring how many times your monthly payment has changed since Ditech's been servicing your loan, and details as to why it is changing. You also inquire as to the internal process used to calculate your payments and details regarding the process.

    RESPONSE: Ditech has previously responded to this request on 6/13/16, 11/9/16 and 1/13/17. In addition, your loan's payments adjusted based on the yearly escrow analyses conducted, the

34127547v1

interest rate adjustments per the 2010 step-rate loan modification you received, PMI cancellation, and 11/17/16 Re-amortization Modification Agreement. See copies of notification letters and agreements enclosed. Ditech's internal process used to calculate the new payments depending on the reasons (explained above) is proprietary and those details will not be disclosed.

3.  REQUEST FOR INFORMATION/DOCUMENTS – ORIGINAL VALUE. You request for evidence as to your property's original value of $166,000.00, and what information Ditech has in its system supporting the original value. You also inquire as to whether your property value has changed and what information Ditech may have regarding your current property value.

    RESPONSE: Ditech has previously responded to this request on 9/21/15 and 10/1/15.

4.  REQUEST FOR INFORMATION/DOCUMENTS – PRINCIPAL BALANCE. Ditech understands you want confirmation that your principal balanced as of 3/9/15 in the amount of $129,368.06 was correct.

    RESPONSE: Yes, your principal balance on 3/9/15 was correct. Your request also expresses your dissatisfaction with Ditech's previous responses regarding when your PMI was scheduled to automatically terminate. Ditech has reviewed this matter several times, and maintains that it has appropriately responded to your requests and has properly serviced your loan. Please refer to Ditech's explanation provided on 10/1/15. Further, please see Ditech's response below to Request Number 5.

5.  NOTICE OF ERROR/REQUEST FOR INFORMATION/DOCUMENTS. Ditech understands you want an explanation as to why you were advised the 78% LTV ratio was scheduled to be met on 8/1/20, 8/1/16 and when it was cancelled on 6/1/16.

    RESPONSE: The Homeowners Protection Act (HPA) is the federal law that governs the right to cancel or terminate private mortgage insurance (PMI). Because your loan originated in 2007 to refinance your single-family, principal residence, it is subject to the HPA. Because your loan was modified in 2010 as a step-rate mortgage, which is a form of an adjustable rate mortgage.

    *Automatic Termination*: Under the HPA, PMI will automatically terminate on the Termination Date, which is the date on which the unpaid principal balance (UPB) of the loan, based solely on the amortization schedule then in effect, is first scheduled to reach 78% of the original value of the property, provided that the borrower is current on the required payments. If the borrower is not current on the required payments, PMI will automatically terminate on the first day of the first month beginning after the date that the borrower becomes current.

    *Cancellation*: Under the HPA, borrowers have the right to request that PMI be cancelled on the Cancellation Date. The Cancellation Date is either the date on which the loan-to-value (LTV) of the loan (1) based solely on the amortization schedule then in effect, was first scheduled to reach 80% of the original value of the property or (2) based on actual payments, reached 80% of the original value of the property.

    A borrower's request to cancel PMI will be granted if the borrower:
    1.  Has submitted a written request to the servicer that cancellation be initiated;

2. Has a good payment history with respect to the mortgage. ("Good payment history" essentially means that no mortgage payment has been 30 or more days late during the last 12 months or 60 or more days late during the last 24 months);

3. Is current on the payments required by the terms of the mortgage; and

4. Has provided the servicer with:
   a) evidence that the value of the property securing the mortgage has not declined below the original value of the property; and
   b) certification that the property securing the mortgage is unencumbered by a subordinate lien.

Ditech received your request to cancel PMI and completed its review in September 2015. As noted above, your loan was modified in 2010. Please refer to Ditech's 9/3/15 review previously provided to you regarding the results of this review.

In April 2016, Ditech re-reviewed your loan for PMI cancellation (which is different than PMI termination) to see if the LTV had met the required 80% threshold. As such, Ditech used the amortization schedule of the modified mortgage loan along with the "original property value" of $166,000.00 (*i.e.*, the value used to approve the refinance). The unpaid principal balance at the time of this review was $119,837.67, resulting in an LTV below the 80% threshold. Based on actual payments, and because you had a good payment history, we cancelled your PMI after your 5/1/16 payment.

Because your PMI payments ceased due to cancellation and not termination, information about the projected end dates provided to you for PMI termination, based on the 78% LTV ratio, are not relevant pursuant to 12 CFR 1024.36(f)(iii). Furthermore, you have asserted claims based on the timing of your PMI cancellation in the pending litigation, and such claims will be resolved in the course of that litigation.

6. NOTICE OF ERROR/REQUEST FOR INFORMATION – LOAN RATE TYPE. Ditech understands you believe that you were provided contradictory information as we provided the 9/3/15 Fannie Mae MI Cancel Request Review ("9/3/15 Review") which you believe contradicts our 11/9/16 explanation that your 2010 modification modified your loan to a fixed interest rate step rate.

RESPONSE: Ditech maintains that the 9/3/15 Review does not contradict our 11/9/16 correspondence to you. You obtained a loan modification on 5/1/10, which provides a fixed step rate modification. It is not scheduled to adjust as a variable interest rate would per the current index at the time of the adjustment date.

> *Interest rate 5/1/10 – 4/1/15: 3.75%*
> *Interest rate 5/1/15 – 4/1/16: 4.75%*
> *Interest rate 5/1/16 – 7/1/37: 5.00%*

At the time of the borrower-initiated PMI cancel request review on 9/3/15 your interest rate was 4.75%. Please review the amortization schedule attached thereto as it clearly identifies the change in the interest rate. At the time of Ditech's 11/9/16 correspondence, Ditech advised your interest rate was currently 5.00% as per the terms of the modification your interest rate increased to 5.00% effective 5/1/16.

7.  REQUEST FOR INFORMATION/DOCUMENTS – SERVICING FILE. Ditech understands you are disputing the late fees assessed by the prior loan servicer, Bank of America, and you are requesting your entire servicing file (including when Bank of America was servicing the loan).

    RESPONSE: Ditech previously responded to your inquiry regarding the assessment of late fees by Bank of America on 1/13/17. Additionally, this request is overly broad and unduly burdensome as inquiring as to the assessment of late fees from the prior loan servicer does not support the request for the entire servicing file. Notwithstanding, please see Ditech's previous responses enclosed, and the additional loan documents enclosed. The payment history previously provided to you on 9/21/16 shows when Bank of America assessed you a late fee. Enclosed is the most recent copy of your payment history.

8.  NOTICE OF ERROR/REQUEST FOR INFORMATION. Ditech understands you are requesting how Ditech's notes regarding communication between yourself and Ditech are confidential, and you request Ditech support its legal position that such information is confidential.

    RESPONSE: The account notes contain more than communications between the yourself and Ditech. The account notes also include system codes, automatically generated notes, and communications between Ditech and its own Counsel which are privileged and proprietary. Accordingly, Ditech will not be providing the account notes. In support of Ditech's position see 12 CFR Part 1024.36(f)(1)(ii).

9.  REQUEST FOR INFORMATION/DOCUMENTS. Ditech understands you are requesting another copy of your 12/13 billing statement as you cannot locate it in Ditech's 1/13/17 response.

    RESPONSE: The 12/9/13 billing statement is page 690 of Ditech's 1/13/17 response. See another copy of your 12/9/13 billing statement enclosed.

10. REUQEST FOR INFORMATION/DOCUMENTS – SPEEDPAY. Ditech understands you are inquiring what Speedpay is, whether you were assessed additional fees for using this payment method, and for Ditech's authority to charge you such fees.

    RESPONSE: A Speedpay payment allows a customer to make a payment through a website payment, an IVR call (automated dialing), or set up a payment with a customer service representative. If a customer initiates a Speedpay payment through any of the above referenced mediums they are notified of an additional charge that will apply. On 2/17/14, you used Speedpay and were charged a $12.00 service fee for this payment method. A confirmation letter for this payment was provided to you on 2/18/14 (see a copy enclosed). On 2/21/14, this payment was returned to you as it did not clear (see a copy of the notice provided to you enclosed).

11. NOTICE OF ERROR/REQUEST FOR INFORMATION/DOCUMENTS – LATE FEE.

    a.  Please explain the differences between assessed, paid, waived and reversed as it relates to late fees.

        RESPONSE: These terms are self-explanatory.

Page 5 of 5

b.  Please explain why I was assessed a late fee of $48.78 on 4/16/16.

RESPONSE: You were not assessed a late fee of $48.78 on 4/16/16. You were assessed a late fee of $40.78. Your loan payments are due on the 1st of each month. The Note (see a copy enclosed) provides that a late fee may be assessed if the payment due is not received within 15 days after it is due. The late fee may be equal to 5% of the overdue principal and interest payment. On 4/16/16, when Ditech had still not received your 4/1/16 payment, it assessed you a late charge in the amount of $40.78, which is 5% of the principal and interest payment due at that time ($815.58).

c.  Please explain why I paid a late fee of $4.25 on 4/18/16

RESPONSE: On 4/18/16 the suspense balance was $1,072.18. This was enough to post $1,067.93 towards the 4/1/16 payment due with the extra $4.25 applied towards the late fee balance. Please see the payment history provided to you on 9/21/16 and enclosed is the most recent copy of your payment history.

d.  Please why only $36.53 of the late fee of $48.78 was waived on 4/23/16.

RESPONSE: On 4/23/16 the late fee balance was only $36.53.

e.  Please explain the location of the $4.25 through 4/16/17 through 6/13/16.

RESPONSE: Ditech does not understand what you are requesting and is unable to provide a response. If you mean $4.25 that was reversed off the late fee (posted on 4/18/16) then applied towards a principal curtailment on 6/4/16, please see the payment history provided to you on 9/21/16 and enclosed is the most recent copy of your payment history.

If you have any further questions please contact Ditech's attorney, Troutman Sanders, LLP, 600 Peachtree Street NE, Suite 5200, Atlanta, GA, 30308, 404-885-3000.

Sincerely,

Meredith Freeman
Ditech Financial LLC
In-house counsel

Enclosures



**Ditech Financial LLC**
345 St. Peter Street, Suite 1400
Saint Paul, MN 55102
T 651.293.4800
F 651.293.5818
ditech.com

May 6, 2016

Traci St Claire
8390 Emerald Pointe Lane
Gainesville, GA 30506

     Re: Consumer Financial Protection Bureau ("CFPB") Case No: 160305-000088
     Ditech Financial LLC Account No: 38461075

Dear Mrs. St Claire,

We are in receipt of your complaint filed with the CFPB regarding the servicing of your loan by Ditech Financial LLC ("Ditech"). Ditech takes your complaint seriously and appreciates this opportunity to respond.

Ditech records reflect that you have received HAMP incentive credits as follows:

     INCENTIVE CREDITS:
     2/22/11: $1,007.87
     2/15/12: $1,000.00
     2/13/13: $1,000.00
     1/02/14: $1,000.00
     1/01/15: $1,000.00
     2/03/16: $5,000.00

I have enclosed a copy of the HAMP Loan Modification Agreement that you entered into with the prior loan servicer in 2010. According to the terms of this agreement, your loan is scheduled to reach 78% LTV on August 1, 2016. At that time, Ditech will review your loan to determine of you are eligible to cancel the private mortgage insurance ("PMI").

Ditech sent you an offer to recast your loan on March 30, 2016. A copy of this offer has been enclosed for your review. Please contact Ditech's Customer Service Department at 1-800-643-0202 with any additional questions or concerns regarding this notice.

Sincerely,

*Cindy Leete*

Cindy Leete, Paralegal                          cc: CFPB Via Portal


a Walter company

Ditech Financial LLC
P.O. Box 6172
Rapid City, SD 57709-6172
(800) 643-0202
Fax: (866) 870-9919
HAMPDisputes@ditech.com

May 19, 2016


TRACI ST CLAIRE

RE:   Ditech Financial LLC ("Ditech")
      Account Number: 35461075
      Case Reference #: 10926

Dear Traci St Claire:

Ditech Financial LLC ("Ditech") has completed a review of the above-referenced inquiry or dispute case number. Ditech has determined the following:

The account is current and, based on the documentation you provided, you are able to pay your current mortgage.

Based on your correspondence that states you did not receive a Recast letter. A review of your loan does not support this claim. On 03/30/2016, Ditech mailed a Recast letter, which advised, "Ditech will apply a $5,000.00 principal reduction payment as part of the year six pay for performance incentive under HAMP. In addition to the principal reduction incentive, Ditech is offering you a onetime offer to re-amortize or "recast" your unpaid principal balance (excluding deferred principal) over the remaining term of the loan at no cost to you." According to the document, if you wish to be considered for the recast option, you must sign and return the offer by 05/04/2016, to start the process. Additionally, with the recast, the total interest paid over the life of the loan will be $71,831.34. The total interest was based on an estimated unpaid principal balance of $114,837.67 over the remaining terms of 255 months and an interest rate of 5.00%. Ditech has reviewed the interest calculation again and has determined that the interest was calculated correctly.

On 04/20/2016, you sent a letter stating, "I've included the signed notice but be advised my signature in no way means that I agree to paying any more interest on my loan or that I agree to any other changes to my loan other than the principal, interest reduction and the recast itself." The term of the recast offer is non-negotiable. Therefore, Ditech did not apply the terms of the recast offer.

Based on your correspondence request to provide a Private Mortgage Insurance (PMI) termination removal date. On 04/07/2016, Ditech mailed you a letter, which advised, in order to cancel your PMI you have to provide us with:

a) evidence that the value of the property securing the mortgage has not declined below the original value of the property. In order to provide such evidence, you will need to complete an Authorization for Appraisal/BPO, which we will provide upon request; and
b) certification that your equity in the property securing the mortgage is unencumbered by a subordinate lien.

Ditech must validate that the Loan to Value of the subject property is below 80%, in order to move forward with the deletion of the PMI. Please submit a written authorization for Ditech to order an appraisal in your behalf, which will be charged to your account.

Enclosed is a copy of these letters for your review. We believe this resolved all concerns that you have expressed to Ditech. If you have any additional questions, you may contact your assigned Single Point of Contact Shareda H. at 1-800-643-0202, extension 85145.

If you have any additional questions, please call us toll-free at (800) 643-0202, Monday – Friday, 7:00 a.m. to 8:00 p.m. CT, and Saturday 7:00 a.m. to 1:00 p.m. CT; Ditech has designated the following address where mortgage loan customers must send any Qualified Written Request, Notice of Error or Request for Information:  P.O. Box 6176, Rapid City, SD 57709-6176.

Respectfully,

Ditech

/kas/45/

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.