FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

DEC 19 2018

JAMES N. HATTEN, Clerk
By: ︎︎︎ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRACI ST. CLAIRE, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NUMBER: |
| | ) NO. 1:17-cv-03370-AT-JFK |
| DITECH FINANCIAL LLC, f/k/a GREEN TREE SERVICING, LLC, FEDERAL NATIONAL MORTGAGE ASSOCIATION | ) |
| | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

## PLAINTIFF'S VERIFIED MOTION FOR PRELIMINARY INJUNCTION, DECLARATORY AND EQUITABLE RELIEF

### INTRODUCTION

It's been my fear that the solvency of DHC could have a negative impact on my lawsuit. According to its Third Quarter 2018 Highlights and Financial Results DHC, [1] the "Company" conducted a Strategic Review in which it stated:

---

[1] https://mma.prnewswire.com/media/785022/DHCP_FY2018_Q3_Earnings_Release.pdf

Page 1 of 15

> "The Strategic Review is ongoing, and in connection therewith the Company is considering a range of potential transactions including, among other things, a sale of the Company, a sale of all or a portion of the Company's assets, and/or a recapitalization of the Company."

## **PROCEDURAL POSTURE**

On September 21, 2018, Ditech's Motion to Dismiss was denied and the parties were ordered to attend mediation. I initially had "high hopes" for a positive outcome, notwithstanding the fact that litigation would be delayed. On October 3, 2018, I filed a Motion to Reconsider Reopening the Case and Motion for Leave to Amend and Supplement Complaint[2] which was denied. The parties are now ordered to attend mediation on January 23, 2019 at which time, this case will have been stayed for **7 months and 29 days** (emphasis added). The last motion filed was Defendants Response in Opposition to Plaintiff's Motion to Strick ... wherein opposing counsel writes:

> To the extent that the Plaintiff requires additional documents in preparation for the mediation, counsel for Ditech will continue to facilitate the Plaintiff's requests."
> *(Doc 41 p. 6)*

Counsel *has not* sent me the additional documents that I requested and it

---

[2] It's worth noting that I requested consent to amend complaint from opposing counsel on July 19, 2018. That request was ignored and Ditech plans to object to it, which will delay proceedings even further.

continues to ignore my questions and often, doesn't bother to extend the plain professional courtesy of acknowledgement.[3]

The Honorable Judge Fuller's Order required the parties to continue to negotiate in good faith, that specific proposals and counter proposals be made and the parties attempt to settle the case without the involvement of the Court, which I have tried to do since former counsel withdrew specifically in consideration of my pro se status.

From the beginning, Ditech has been inflexible with scheduling dates for the mediation, consistently choosing dates furthest in the future from the ones provided. The mediation could have been completed in November if not for Ditech's inflexibility. Then Ditech initially refused to discuss settlement negotiations with me at all and dragged its feet, taking as much time as it could to even schedule a telephone conference with me. When that finally happened on November 28, 2018, only six days prior to the first scheduled mediation, Ditech's counter proposal had not changed. This in spite of the Court's ruling on its Motion to Dismiss, the additional allegations in my First Amended Complaint "FAC", and the overwhelming evidence to support those allegations that I've provided to Ditech's

---

[3] Besides two phone calls, I have attempted to communicate with opposing counsel via email.

in-house counsel and in multiple emails to outside counsel, both before and after the *Administrative Stay*.[4]

Though claims for breach of contract for misapplied payments are in the FAC, I would like very much to be able to reconcile my bank statements with Ditech's payment history but I can't make sense of it and Ditech continues to offer answers to my questions regarding certain payments that don't address the underlying issue of the misapplication of those payments or how it affects the interest I owe over the life of the loan. Attached as Exhibit A is Ditech's Payment history[5]

## ADDITITONAL FACTS

*Plaintiff incorporates all allegations in her Complaints and further outlines the following:*

I refinanced my home with Countrywide in 2007 using an appraised value of

---

[4] I've continued to send QWRs/NOEs/RFIs during this time to resolve issues and errors that remain on the loan, including the issue with PMI as it is still an error related to the servicing of my loan. Ditech prefers to resolve this issue in the pending litigation which seems contrary to the Court wishes that the parties resolve this own their own as well as opposing counsel's statements that it work in good faith towards a resolution. Ditech also thinks my letters are an attempt to conduct discovery however fails to acknowledge that the information sought relates to the servicing of my loan and it obligations to respond under C.F.R § 1024.36.

[5] The payment histories are printed on legal sized paper, which must be scanned and converted to a letter size, in order to file them with the court.

$166,000. Therefore the original value of my loan was $166,000 for purposes of determining the end dates for PMI cancellation and termination under the Homeowner's Protection Act "HPA". 80% of $166,000 is $132,800 and requires $33,200 in payments to be eligible for borrower cancellation under U.S.C. §4902 (a). 78% of $166,000 is $129,480 and requires $36,520 in payments made to be eligible for automatic termination under U.S.C. §4902 (b).

Bank of America purchased Countrywide and BOA's servicer, BAC Home Loans Servicing, serviced the loan. Upon information and belief, the Federal National Mortgage Association "Fannie Mae" has at all times been the owner/investor of the loan.

I received a HAMP modification effective May 2010. This modification didn't change the original value of my loan however it did change the interest rate from a fixed to step or adjustable rate and thus principal and interest payments. No new amortization schedule was provided as a result of the modification.

The HAMP modification enforced the loan documents, of which included a PMI disclosure that stated for adjustable rate loans, that lender would notify the borrower of end dates for PMI termination since these dates would change when the rate changed. Ditech did not notify me of these dates and therefore breached our

contract.[6]

On our around June 2013, upon transfer of my loan to then Green Tree, Defendant changed the value of my loan from $166,000 to $142,252 without warrant or notification.[7] This change in value amounts to *fraud* and upon information and belief, Fannie Mae condoned and/or required this change.[8]

By doing so, both Ditech and Fannie Mae stood to directly benefit from the increase in duration of PMI payments by extending them for several years.

This change in value caused Ditech to violate the HPA in one case on **September 15, 2015** (emphasis added). See also Rice v. Green Tree Servicing, Civil

---

[6] This document presents a valid breach of contract claim and should have been in the original complaint. To the best of my knowledge, this was an oversite by former counsel and was also an oversite on my part. I did not discover the document or realize its applicability and importance to my case until after receiving my files back on August 9, 2018. Further I fully intend to recast and supplement to include this allegation. Ditech's response to this document is simply that the document doesn't mean what it says because the schedule never changed. However the record provides unequivocal proof that the schedule did indeed change on multiple occasions due to my receipt of HAMP incentive payments.

[7] I contacted Bank of America on November 26, 2018 and they have no record of this value of $142,252. The results of their investigation, provided via U.S. mail only include a copy of the appraisal.

[8] This was taken from then Green Tree Servicing's defense in the Rice case.

Action No. 3:14-CV-93.

Also on September 15, 2015 I filed a complaint with the Better Business Bureau "BBB" alleging violations of the HPA. Ditech replied to this complaint and informed me for the first the first time of the new fraudulent original value. A copy of the BBB complaint is attached to the FAC as Exhibit "F" and incorporated herein by reference.

Ditech knew in advance from Rice that using a value other than the original value might expose them to further litigation under the HPA but Ditech continued using this fraudulent value to service my loan.

According to Ditech, PMI was cancelled effective May 11, 2016[9] and I received a check for unearned premiums in the amount of $26.71 on August 4, 2016. Therefore it is undisputable that Ditech did not return unearned premiums within 45 days as required under U.S.C. §4902 (f)(1). Therefore at minimum, Ditech owes me statutory damages for that violation plus attorney fees and costs. However the amount of these premiums and the date Ditech should have actually terminated PMI, remain in dispute and *Ditech continues to change its story and defense* (emphasis

---

[9] I was not informed of this date until after this lawsuit was filed. This cancellation appears to be in violation of Fannie Mae's guidelines.

added.)[10]

The latest example is Ditech's November 12, 2018 whereby in reference to my initial fax dated August 29, 2015 [*See Doc. 10-1, Exhibit M*] Monika Scott wrote: *"Ditech interpreted your communications at this time as a **request for cancellation**."* What is most interesting about this is that in Ditech's Motion to Dismiss page 28 defense counsel writes: *"Plaintiff discovered the purported violation under the HPA on or before August 29, 2015, when she sent a written inquiry to Green Tree **informing it that her PMI should be terminated as of September 1, 2015** (emphasis added.)"*

*Both of these statements can't be true* and it appears that Ditech, with the assistance of outside counsel, have crossed ethical lines, have not been fair in their dealings with me at all and are acting in bad faith.

Upon information and belief, Ditech, with the assistance of outside counsel, has set out to prejudice me, to delay these proceedings and to entangle this lawsuit in bankruptcy or worse which is why they're non-responsive. They have no reason to comply with any rule or law when they have plans to dispose of this lawsuit in other ways or in the alternate, dispose of the loan and therefore any obligation to

---

[10] See also Ditech's February 26, 2018 letter attached as Exhibit Q

other ways or in the alternate, dispose of the loan and therefore any obligation to correct the remaining errors.

## **DECLARATORY RELIEF**

To obtain a declaratory judgment under Georgia law, a plaintiff "must establish that a declaratory judgment is necessary to relieve herself of the risk of taking some future action that, without direction, would jeopardize her interests.

"[A] plaintiff seeking declaratory ... relief must allege ... a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury." Strickland v. Alexander, 772 F.3d 876, 883 (11th Cir. 2014) (internal quotation marks and citation omitted).

On July 19, 2018, I requested consent from opposing counsel to file the FAC, They did not respond. I did not want to file the FAC, I wanted to try and resolve the issues directly because of my pro se status but Ditech again, was non responsive. My claims do not matter, damages do not matter but yet they can't offer a legal argument as to why.

Though this action was filed over a year ago, it is still in its infancy, pretrial deadlines have been stayed and the liberal amendment policy under the Federal Rules of Civil Procedure favors granting the leave when justice so requires.

Considering again the current posture of the case, any motion that Ditech

might file in opposition could likely be deemed frivolous under Rule 11 of the Federal Rules of Civil Procedure. Because the FAC contains allegations for intentional torts that can't be easily discharged in a bankruptcy proceeding, I respectfully request the Court for declaratory relief and judgment as to my FAC so that it may be granted and filed immediately upon the court.[11]

## **PRELIMINARY INJUNCTION**

Before a court will grant a motion for injunctive relief, the moving party must establish that: (1) she has a substantial likelihood of success on the merits; (2) she will suffer irreparable injury if the relief is not granted; (3) the threatened injury outweighs the harm the relief may inflict on the non-moving party; and (4) entry of relief would not be adverse to the public interest. KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006). "Of these four requisites the first factor, establishing a substantial likelihood of success on the merits, is most important . . . ." ABC Charters, Inc. v. Bronson, 591 F. Supp. 2d 1272, 1294 (S.D. Fla. 2008).

Plaintiff therefore respectfully moves this Court for a Preliminary Injunction enjoining Defendants and all persons acting at Ditech's direction, including its

---

[11] Ditech has been given 14 days to respond to Motion for Leave to file FAC however they will have had it for over six months by the time they are required to respond.

officers, agents, servants, and employees from the sale or transfer of the servicing rights of my loan, and from the acceleration, foreclosure, sale, transfer, or assignment of my mortgage, including the collection of any fee and the reporting of any negative information to any credit bureau for the duration of this litigation.

*See Caselli v. PHH Mortgage 1:11-CV-2418-RWS* whereby the Court orders Defendant take no action to transfer the property of Plaintiff, whether by foreclosure sale or otherwise, until further order of the Court.

### 1. Plaintiff Demonstrates a Substantial Likelihood of Success on the Merits.

The allegations and facts outlined in my Complaints are supported by enough evidence in the record and along with the additional, verified facts and allegations included in this Motion, there is a substantial likelihood that I will succeed on the merits. As shown, Ditech's defense of my RESPA violation rests on authority prior to Regulation X. Also as shown in the record, Ditech's refusal to investigate or correct errors was indeed intentional. Ditech has worked all along to make my home less and less affordable by changing the value of my home, extending PMI, botching the recast offer that was designed to provide relief of the increased interest rate, and misapplying my payments which I believe based on review of this company and the many lawsuits filed against them, was all in an effort to push me into default.

**2.    Plaintiff Will Suffer Irreparable Injury Unless the Injunction is Issued.**

My situation here is precarious at best and requires immediate intervention of the Court. If Ditech sells the company, its assets, or files bankruptcy or even transfers servicing rights before all my claims are on file with the court, any award of damages might be discharged in the bankruptcy. This also applies to settlement negotiations.

It is my understanding that if the parties were to settle this case today, my settlement would not be clear until the 91st day after such settlement check was written and could be recalled by the bankruptcy Judge as a matter of preference.

What makes this matter even worse is that I've been unable to focus on work and have suffered and continue to suffer financial injury and extreme stress as a result of years' worth of battling with this company. If Ditech sells the company or transfers servicing, or reassigns servicing rights, I will essentially have to start over trying to correct errors or gather information from a new servicer.

**3.    The Threatened Injury to the Movant Outweighs Whatever Damage the Proposed Injunctions May Cause to Defendant.**

The purpose of a *preliminary* injunction is "to preserve the status quo and prevent allegedly irreparable injury until the court [has] the opportunity to decide

whether to issue a *permanent* injunction." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1261, 1262 (11th Cir. 2005) (emphasis added).

Even with Defendant Ditech's own financial struggles in consideration, granting the TRO and injunction will at most, cause minimal harm to Defendant Ditech or its parent company Ditech Holdings, which still reported total assets of $12,335,007 in the third quarter of 2018. Nor should granting this motion affect Fannie Mae, which reported a net income of $4.5 billion and a comprehensive income of $4.5 billion for the second quarter of 2018. [12]

### 4. If Issued, the Injunction Would Not be Adverse to the Public Interest.

Granting the Injunctions in this matter would not be adverse to the public Interest and in fact, would be a matter of public interest. Upon information and belief, Ditech services many loans and there is a very good chance that among those are HAMP loans. Other borrowers may have also had their loan values changed and might have taken to heart any assertion by Ditech that it could lawfully change the value of their home after modification.

### EQUTIABLE RELIEF

---

[12] http://www.fanniemae.com/resources/file/ir/pdf/quarterly-annual-results/2018/q22018_release.pdf

that this Court grant her request for Declaratory, Injunctive and Equitable Relief set forth in this motion and any other such remedies the Court will allow and further requests an expedited hearing on these matters based on the DHC's Strategic Review.

Respectfully submitted, this 19th day of December, 2018.

**Traci St. Claire**

By: Traci St. Claire
8390 Emerald Pointe Lane
Gainesville, GA 30506
(404) 606-3021
tracistclaire@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRACI ST. CLAIRE ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION FILE |
| ) | |
| v. ) | NO.   1:17-cv-03370-AT-JFK |
| ) | |
| DITECH FINANCIAL, LLC, ) | |
| f/k/a GREEN TREE SERVICING, LLC ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I served a copy of the attached PLAINTIFF'S VERIFIED FOR PRELIMINARY INJUNCTIONS … on the following party by way of U.S. Mail.

Mark J. Windham and Monika V. Scott
3000 Bank of America Plaza
Troutman Sanders LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308-2216

Respectfully submitted, this 19th day of December, 2018.

**Traci St. Claire**

By: Traci St. Claire
8390 Emerald Pointe Lane
Gainesville, GA 30506
(404) 606-3021
tracistclaire@gmail.com

Page 1 of 1

## 2. Plaintiff Will Suffer Irreparable Injury Unless the Injunction is Issued.

My situation here is precarious at best and requires immediate intervention of the Court. If Ditech sells the company, its assets, or files bankruptcy or even transfers servicing rights before all my claims are on file with the court, any award of damages might be discharged in the bankruptcy. This also applies to settlement negotiations.

It is my understanding that if the parties were to settle this case today, my settlement would not be clear until the 91st day after such settlement check was written and could be recalled by the bankruptcy Judge as a matter of preference.

What makes this matter even worse is that I've been unable to focus on work and have suffered and continue to suffer financial injury and extreme stress as a result of years' worth of battling with this company. If Ditech sells the company or transfers servicing, or reassigns servicing rights, I will essentially have to start over trying to correct errors or gather information from a new servicer.

## 3. The Threatened Injury to the Movant Outweighs Whatever Damage the Proposed Injunctions May Cause to Defendant.

The purpose of a *preliminary* injunction is "to preserve the status quo and prevent allegedly irreparable injury until the court [has] the opportunity to decide whether to issue a *permanent* injunction." Schiavo ex rel. Schindler v. Schiavo, 403

Security Deed attached to my FAC as Exhibit "A" and incorporated herein by reference as the "Deed", in an additional effort to maintain the status quo, Plaintiff further seeks Equitable Relief from my contractual obligations under the Security Deed and Note until such time this court has considered all my claims including those for breach of contract within my FAC.

Plaintiff has tendered all payments currently due under the note notwithstanding the errors and the principal balance of the note. I desire to stay in my home and to make my monthly mortgage payment and fully intend to forward the amount owed once the corrections are made to my account and the correct amount due has been determined.

Because of the broken relationship and ongoing errors, I have tendered my December 2018 payment into a separate escrow account, have paid my hazard insurance payment in full and have provided Ditech with proof of that payment. I further respectfully request that I be allowed to tender all payments due under the note into this account for the duration of the litigation. In the alternate, I can tender P&I payments into the Court registry.

## CONCLUSION

For the reasons and arguments outline above, Plaintiff respectfully requests that this Court grant her request for Declaratory, Injunctive and Equitable Relief

set forth in this motion and any other such remedies the Court will allow and further requests an expedited hearing on these matters based on the DHC's Strategic Review.

Respectfully submitted, this 19th day of December, 2018.

Traci St. Claire

*[signature]*

By: Traci St. Claire<br>
8390 Emerald Pointe Lane<br>
Gainesville, GA 30506<br>
(404) 606-3021

State of Georgia
County of __Hall__

Sworn to (or affirmed) and subscribed before me this __19__ day of __December, 2018__, by, __Traci St. Claire__.
(name of signer)

____ Personally Known
____ Produced Identification
Type and # of ID __GADL 053062455__

_____
(Signature of Notary)

(Seal)

__Brian Cannon__
(Name of Notary Typed, Stamped, or Printed)
Notary Public, State of Georgia

[Notary Seal: BRIAN CANNON, NOTARY PUBLIC, FORSYTH COUNTY, GA, Exp. Oct. 02, 2020]