# EXHIBIT B

Troutman Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216

troutman.com



| Mark J. Windham | Monika V. Scott |
|---|---|
| D 404.885.3917 | D 404.885.3731 |
| F 404.885.3900 | F 404.885.3900 |
| mark.windham@troutman.com | monika.scott@troutman.com |

November 12, 2018

**VIA FEDERAL EXPRESS**

Traci M. St. Claire
8390 Emerald Pointe Lane
Gainesville, Georgia 30506-6750

      Re:     **Ditech Financial, LLC**
                **Account Number: 38461075 (the "Loan")**
                **Response to your Letter Dated September 6, 2018**

Dear Ms. St. Claire:

      As you know, this law firm represents Ditech Financial, LLC f/k/a Green Tree Servicing, LLC ("Ditech") in relation to the above-referenced mortgage loan (the "Loan"). We previously provided an acknowledgement and notice of extension as afforded by 12 U.S.C. §2605(e)(2) and 12 U.S.C. §2605(e)(4), with regard to your letter to Ditech dated September 6, 2018, which is attached hereto as Enclosure A (the "Letter").

      To the extent that the Letter is an attempt to make a Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), Ditech objects to the letter as constituting a QWR to the extent that it does not meet the requirements of 12 U.S.C. § 2605(e) and Regulation X. According to 24 C.F.R. § 3500.21(e)(2)(i) a valid QWR includes a statement of the reasons that the borrower believes the account is in error or provides sufficient detail to the servicer regarding information relating to the servicing error of the loan sought by the borrower.

      RESPA provides a borrower with a method of disputing and challenging a *specific error* with the servicing of a borrower's loan. While Ditech remains committed to resolving any actual errors in the servicing of your Loan, it has now responded to multiple QWR's and numerous requests that are duplicative in nature and unrelated to any actual error. Please note that Ditech is not required to provide additional information or documentation regarding issues unrelated to an error in the servicing of the loan. Please also note that QWR requests are not a substitute for litigation discovery.

      **Subject to the foregoing information, please find below Ditech's substantive responses to your Letter upon investigation of each item therein:**

1. You requested total payments and total interest due on loan as of May 2010 when loan was officially modified and the location of this information and expressed that you were not satisfied with Ditech's previous response to this request in your June 4, 2018 letter.

   **Ditech maintains that its previous response was accurate and Ditech is not required to respond again to this duplicative request. Subject to the foregoing, to provide further explanation in good faith, please note that the August 2009 through April 2010 payments were due as of May 2010. The total interest that would have been due for those payments at the interest rate of 6.875% (as specified in the Note) would have been $7,411.81. Regarding total payments made, please note that prior to the 2010 modification being applied to the account, the August 2007 through July 2009 payments were applied to the account.**

2. You requested the total of payments and total interest due on the Loan as of the date it was modified in May of 2010 and the *correct* location of this information.

   **Ditech interprets this request as being substantially similar to your previous request. Please note the information provided in Response 1 above. Please also note that the location of this information is Ditech's payment history, which is enclosed herein as Enclosure B.**

3. You requested the total amount of interest paid on your Loan to date and expressed that you were not satisfied with Ditech's previous response to this request in your June 4, 2018 letter.

   **In Ditech's previous response to this request, it provided the payment history covering all account activity to date and also informed you that Ditech's billing statements include information about interest paid to date. Ditech maintains that its previous response was accurate and Ditech is not required to respond again to this duplicative request. Please also note that this request does not appear to relate to any actual error in the servicing of your Loan. Subject to the foregoing, to provide further explanation in good faith, please note that the total amount of interest paid on your Loan as calculated from the enclosed payment history is $67,020.28.**

4. You requested the total amount of interest paid on your Loan to date.

   **Ditech interprets this request as being substantially similar to your previous request. Please see the foregoing response.**

5. You requested a transaction history from Bank of America and expressed that you were not satisfied with Ditech's previous response to this request in your June 4, 2018 letter.

   **In the previous response, Ditech provided you with the Loan payment history, which includes the payment history during the time that your Loan was serviced by Bank of America. Ditech maintains that its previous response was accurate and Ditech is not required to respond again to this duplicative request. Subject to the foregoing, to provide further explanation in good faith, please note that the portion of the transaction history you have requested has been highlighted in blue in the payment history enclosed herein as Enclosure B. Please note that you are requesting documents that were generated by Bank of America, not Ditech. Please further note that this request clearly does not relate to any**

actual errors in the servicing of your Loan, requests information that is not in the custody of Ditech, and is similar to a generalized discovery request, which Ditech is not required to respond to pursuant to RESPA.  *Wirtz v. Specialized*

6. You requested a copy of the transaction history provided to Ditech from BANA.

   **Ditech interprets this request as being substantially similar to your previous request. Please see the foregoing response.**

7. You requested copies of all billing statements from BANA beginning from May 2010 through May 2013.

   **Please note that you are requesting documents that were generated by Bank of America, not Ditech. Please further note that this request clearly does not relate to any actual errors in the servicing of your Loan, requests information that is not in the custody of Ditech, and is similar to a generalized discovery request, which Ditech is not required to respond to pursuant to RESPA. Subject to the foregoing, to provide further explanation in good faith, Ditech is providing the documents enclosed as Enclosure C. These documents include the servicing letter from Bank of America and the welcome letter from Green Tree, which provide details about the June 1, 2013 service transfer of your Loan. Please also find the enclosed Bank of America billing statements that Ditech was able to obtain in its investigation of this request.**

8. You requested the original and unredacted amortization schedule that was created at the time of your HAMP modification that includes all pages.

   **Please note that the amortization schedule for the Loan from the time of the HAMP modification Bank of America was provided to you previously. An unredacted version of the amortization schedule beginning at the time of the 2010 modification is enclosed herein as Enclosure F. In addition, Ditech provided actual amortization schedules to you in its previous letter dated November 5, 2018 and by email from Mark Windham, Esq. dated October 30, 2018.**

9. You requested documents that support Ditech's application of HAMP incentive payments to your Loan and expressed that Ditech's previous response did not include documents to support that Ditech properly applied your HAMP inventive payments.

   **Ditech maintains that its previous response was accurate and Ditech is not required to respond again to this duplicative request. Subject to the foregoing, to provide further explanation in good faith, please note that it appears that the HAMP incentive credits were applied to the account between February 2011 and January 2015. The 6th year incentive payment in the amount of $5000.00 was applied on February 3, 2016. Each of the transactions are highlighted in purple on the payment history enclosed in Enclosure B. On March 29, 2016, a duplicate credit of $5000.00 was applied as the 6th year incentive in error and this was reversed off the account on March 30, 2016. Based on Ditech's review, it appears that Ditech properly applied the HAMP incentive payments. If you believe that the incentive payments were applied in error, please let me know the basis of this determination and Ditech will investigate further.**

3

10. You inquired whether the U.S. Treasury specified to Fannie Mae or Ditech when HAMP incentives payments be were to be applied and expressed that this would impact the overall interest due on your Loan.

    **Ditech maintains that its application of HAMP incentive payments to your account was accurate and in compliance with its servicing guidelines and the relevant law. Each of the HAMP incentive payments were applied to and reduced the principal balance of your Loan. If you believe that the incentive payments were applied in error, please let me know the basis of this determination and Ditech will investigate further.**

11. You requested information regarding what the $7.87 extra represents on the HAMP incentive payment applied to your account on February 21, 2011 and asked whether this was a part of the HAMP Incentive Payment.

    **Please note all of the HAMP incentive payments for your Loan have been highlighted in purple on the payment history enclosed as Enclosure B. It appears that the $7.87 was a part of the HAMP incentive payment for 2011 that Bank of America applied to your Loan. Please note that this request refers to Loan activity before Ditech began the servicing of your Loan. Ditech cannot determine why Bank of America applied $1,007.87 to your Loan for the incentive payment as opposed to $1000.00. Ditech has reached out to Bank of America to determine if any additional details can be provided and if so, will notify you accordingly. To the extent that Bank of America applied more money to your Loan balance than was required by HAMP, it appears this was to your benefit. However, Ditech is prepared to correct the account if it is determined that an error was made by Bank of America.**

12. You requested that Ditech explain "the difference in the $17.61 difference [sic] in the payments applied to [your] account during the month of April 2014."

    **Ditech has investigated this request and does not see a $17.61 difference in the April 2014 payment that was applied. If upon review of this letter or its enclosures, you believe that a specific error exists as to this issue, please notify me of your claim.**

13. You requested that Ditech explain why the extra principal payment that you made in December 2017 was not applied until January 2018 and expressed dissatisfaction about the response that you received previously in which Ditech indicated that it properly applied the payment.

    **Ditech maintains that its previous response was accurate and Ditech is not required to respond again to this duplicative request. Subject to the foregoing, to provide further explanation in good faith, please note that Ditech has investigated this request and the extra $9.06 from the December 16, 2017 payment was applied towards principal on December 16, 2017. The principal posting of $9.06 on January 16, 2018 was from the extra funds sent with the January 15, 2018 payment. This is highlighted in yellow on the enclosed payment history. It does not appear that these payments were applied late.**

14. You requested information regarding every call that you have ever made to Ditech and the reason for the call.

4

Please note that RESPA is not a substitute for litigation discovery and your request is similar to a discovery request. In addition, you have not specified that this request is related to an actual servicing error that you have discovered in your Loan. Subject to the foregoing, to provide further explanation in good faith, please find enclosed as Enclosure D Ditech's call notes, which includes the dates of calls that took place between you and Ditech and the reason for the call. We trust that this documentation has fully addressed your request.

15. You state that Ms. Freeman, who provided responses to two of your previous letters, falsely stated that the HAMP modification agreement you entered into with Bank of America modified your loan into a "fixed step rate" loan because you did not find that verbiage within the agreement.

    Ditech maintains that its previous response was accurate and Ditech is not required to respond again to this duplicative request. Ditech has informed you in previous responses that your Loan is a "fixed step rate" mortgage, which is regarded as an adjustable rate mortgage for purposes of PMI calculation. To the extent that you are disputing the terminology that Ditech has used to describe this Loan which it services, this is not an actual error with the servicing of your Loan.

16. You state that Ditech has breached the uniform covenants of the Security Deed by its misapplication of principal curtailment payments into a UAF account when they should have been applied to principal during the period from July 2013 through July 2018.

    Ditech has investigated this request. Ditech notes that this request is both vague and overbroad and therefore difficult to respond to. Subject to the foregoing, to provide further explanation in good faith, please note that Ditech has reviewed the running suspense of your UAF account and has not discovered that any errors relating to UAF account during the timeframe in question.

17. You state that you believe that your Loan was "on boarded incorrectly and as a result, [you] believe the beginning principle [sic] balance is incorrect."

    Ditech has investigated this request. Please note that RESPA does not require Ditech to provide information relating to the origination of the Loan, which was not completed by Ditech. Please further note that this request is too vague to form a substantive response and fails to provide sufficient detail to Ditech as to why you believe the account is in error. In reviewing your account, Ditech has not identified any facts to indicate that your Loan was onboard incorrectly or that the beginning principal balance is incorrect.

18. You state that you believe the payment histories supplied to you by Ditech are inaccurate and full of mistakes and requested that Ditech "correct these mistakes and provide an accurate payment history.

    Please note that this request is too vague to form a substantive response and fails to provide sufficient detail to Ditech as to why you believe the account is in error. Please further note that Ditech has reviewed your payment history, an annotated copy of which is enclosed for your reference in Enclosure B, and has not identified any accounting errors that require correction.

5

19. You have requested an investigation of "all late fees charged and paid" because you believe you have paid late fees that you believe you did not owe.

    **Please note that this request is too vague and overbroad to allow a substantive response and fails to provide sufficient detail to Ditech as to why you believe the account is in error. Please further note that Ditech has reviewed your payment history, an annotated copy of which is enclosed for your reference, and has not identified any late fees that were in error and require correction.**

20. You state that Ditech has violated the terms of the note and Fannie Mae's servicing guidelines by cancelling your PMI without performing an appraisal or confirming that no subordinate liens exist on the property.  THPA

    ***Ditech has investigated this request. Ditech denies that a PMI cancellation request requires Ditech to perform an appraisal or confirm that no subordinate liens exist on the property, or that Ditech violated the terms of the note and the servicing guidelines. Rather, in submitting a request for cancellation, the borrower is required to satisfy "any requirement of the holder of the mortgage" for (i) evidence that the value of the property has not declined below the original value and (ii) certification that the borrower's equity in the property is not subject to a subordinate lien. 12 U.S.C. § 4902(a)(4).***

21. You stated that in your June 4, 2018 letter, you asked if Ditech was aware that the cover letter that accompanied the recast cover letter contained the wrong address and that Ms. Freeman provided incorrect information to you.

    ***Ditech maintains that its previous response was accurate and Ditech is not required to respond again to this duplicative request. Subject to the foregoing, Ditech has investigated this request. In reviewing your account, Ditech notes that the recast offer letter dated March 30, 2016 was delivered to the address that Ditech had on record at that time: 8390 Emerald Point Ln, Gainesville, Georgia 30506. It appears that you received the recast offer letter. This request does not to an actual error in the servicing of the Loan.***

22. You requested that Ditech explain the .22 principle adjustment on January 12, 2014.

    ***Ditech has investigated this request. Upon reviewing your account, please note that on January 2, 2014, the HAMP incentive credit of $1,000.00 was applied towards principal and backdated to December 31, 2013. The $0.22 was a system adjustment to the account for the decreased principal that should have been calculated for the January 2014 payment that was applied on December 31, 2013.***

23. You state that Ditech failed to notify you when your loan was scheduled to reach 80% and 78% or the original value of the property in accordance with the Mortgage Disclosure Statement.

    ***Please note that Ditech previously provided you with copies of the annual mortgage insurance disclosure statements that were sent to you in compliance with its disclosure requirements under the law. These documents are enclosed herein again as Enclosure E. Ditech denies that it is in violation of the Mortgage Insurance Disclosure dated June 21, 2007 between you and the originating lender, Countrywide Home Loans, Inc. dba America's Wholesale Lender, or that it was required to send additional disclosures.***

6

24. You request that Ditech provide you with a copy of documents that Ditech sent to you to notify you of the dates that your loan was scheduled to reach 80% and 78% LTV.

    **Ditech interprets this request as being substantially similar to your previous request. Please see the foregoing response.**

25. You asked why Ditech declined to provide you the dates that your loan was scheduled to reach 80% or 78%.

    **Ditech interprets this request as being substantially similar to your previous request. Please see the foregoing response. Ditech denies that it is in violation of the Security Deed.**

26. You asked that Ditech provide you with a copy of the letter that you sent to Ditech requesting that your PMI be cancelled and expressed that the two pieces of correspondence provided to you by Ditech do not contain that information.

    **Ditech has investigated this request and provides the following information. Ditech acknowledges that you were provided inconsistent information previously regarding the automatic termination date. Please note that Ditech has performed a new investigation on this issue in responding to your Letter and, based on this investigation, believes that the information provided herein is an accurate determination of your automatic termination date.**

    **Please note the Homeowner's Protection Act (HPA) requires that for adjustable rate mortgages like your Loan, the automatic termination date of PMI is "the date on which the principal balance of the mortgage, based solely on the amortization schedule then in effect for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan." 12 U.S.C. § 4901(18). The term "amortization schedule then in effect" means, with respect to an adjustable rate mortgage, "a schedule *established at the time at which the residential mortgage transaction is consummated or, if such schedule has been changed or recalculated, is the most recent schedule under the terms of the note or mortgage.*" 12 U.S.C. § 4901(6) (emphasis added).**

    **For your Loan, the amortization schedule then in effect is the schedule created by Bank of America at the time of your loan modification dated April 26, 2010. An unredacted version of the amortization schedule beginning at the time of the 2010 modification is enclosed herein as Enclosure F. Please note that your modification agreement specified that your interest rate would change on April 1, 2010, April 1, 2015 and April 1, 2016 to 3.750%, 4.750%, and 5.000%, respectively. The amortization schedule included these contemplated rate changes. This amortization schedule was not "changed or recalculated" and it was "the most recent schedule under the terms of the note or mortgage."**

    **Pursuant to the amortization schedule, which was the schedule "then in effect," your PMI automatic termination date was September 1, 2016 or the date on which the principal balance of your loan was first *scheduled* to reach 78 percent of the original value of the property securing the loan ($166,000).**

*[Handwritten annotation: Rice v. Green Tree pg. 14 used Dec. 2013 schedule.]*

Please note that at the time you contacted Ditech regarding the removal of your PMI in 2015, the automatic termination date had not yet passed. Ditech interpreted your communications at this time as a request for cancellation. Please find enclosed as Enclosure G two documents received by Ditech which were interpreted as requests for cancellation of PMI. Ditech understands that you have expressed that the correspondence that was delivered to Ditech regarding PMI did not request cancellation of your PMI, but rather, that your communications were intended to inquire why PMI had not automatically terminated. Please note that the automatic termination date is connected to an LTV of 78% while borrower-requested cancellation is evaluated at 80% LTV.

Please also note that, based on the facts as we understand them, Ditech complied with Fannie Mae's guidelines when initially evaluating your account for cancellation of PMI. In particular, the Fannie Mae Servicing Guide that was in effect in 2015 provided that "the servicer must . . . use the amortization schedule of the modified mortgage loan *and the property value at the time of the mortgage loan modification.*" (Fannie Mae Servicing Guide, § B-8.1-04, published 3/18/2015) (emphasis added). In April 2016, Ditech re-evaluated your loan after receiving guidance from the Consumer Financial Protection Bureau (CFPB) and used the correct original value of your property, as determined at the time of the loan origination, to determine whether the required 80% LTV had been reached. After this review, PMI on your Loan was cancelled effective June 1, 2016, 3 months prior to the automatic termination date. On May 11, 2016, Ditech delivered a letter to you informing you that "Ditech has reviewed the documentation submitted in connection with the request, and finds that you are eligible for cancellation of PMI [and] [a]s a result, no further premiums, payments or other fees related to PMI will be due or payable on this account." This letter is enclosed as Enclosure H.

27. You requested that Ditech explain the contradictions in the previous information you were provided regarding the automatic termination date.

    The information requested herein has been provided in response to the previous request.

28. You have requested that your escrow be cancelled on your Loan.

    Please note that this is a duplicative request that has been responded to previously. Upon review, it appears that the existence of escrow in an underwriting requirement for your loan. Ditech does not believe that this request relates to an actual error in the servicing of your Loan.

29. You have requested information about how the previous documents provided to you by Ditech support its position that Ditech did not violate the HPA, and requested additional documentation supporting this position or refuting your claim that "Ditech did not timely terminate my PMI when my loan reached 78% LTV."

    Please note that in response to item number 26 above, Ditech explained how the HAMP Modification Agreement and amortization schedule support Ditech's position regarding termination of PMI. Ditech disagrees that the referenced amortization schedule does not support Ditech's position because it "has changed." Please note that PMI termination date under the HPA is the date that LTV is *scheduled* to reach 78%, not when it actually

reaches 78%. Therefore, Ditech was not required to terminate PMI when your "loan reached 78%" as you state. Please further note that QWR requests are not a substitute for generalized discovery and your request is similar to a discovery request. Any further proof or support will be the subject of discovery in the pending litigation.

30. You refer to Ditech's letter dated February 26, 2018 and again express that Ditech did not automatically terminate your PMI when the loan reached 78% in violation of the HPA.

**Ditech interprets this request as being substantially similar to your previous requests and, upon investigation, has supplied the information provided in items 26 and 29 above. Upon investigation, it does not appear that any unearned premiums are owed to you because PMI was cancelled prior to the automatic termination date and you have expressed that you did not request cancellation of PMI prior to the termination date.**

Please note that Ditech has received approximately 7 letters from you after the litigation was commenced on September 5, 2017. These letters, each purporting to be a QWR, contain *over 120 purported notices of error and requests for information*. Ditech has investigating and provided responses to each of these letters. Please note that the information and documents provided to you herein have taken significant time to gather. Many of your requests have been irrelevant to any allegation of an actual servicing error or unnecessary to an adequate investigation of your allegations. Ditech has investigated the items in your Letter and has provided the foregoing information and enclosed documents in good faith.

We trust that this correspondence has fully addressed your concern. By responding to your Letter herein, Ditech does not consent to any allegations that may be contained in the Letter, nor is it waiving any claims or defenses that it may have against you. Should you have any further questions regarding this concern, please contact our office.

Respectfully,

*Monika V. Scott*

Monika V. Scott

Enclosures