**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **TRACI ST. CLAIRE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:17-cv-03370-AT-JFK** |
| | ) | |
| **DITECH FINANCIAL LLC,** | ) | |
| **f/k/a GREEN TREE** | ) | |
| **SERVICING, LLC** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**DEFENDANT DITECH FINANCIAL LLC'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION, DECLARATORY AND EQUITABLE RELIEF**

---

Defendant Ditech Financial, LLC ("Ditech") files its response in opposition to Plaintiff Traci St. Claire's ("Plaintiff") "Verified Motion for Preliminary Injunction, Declaratory and Equitable Relief." (Doc. 43).

Each of Plaintiff's requests for injunctive, declaratory, and equitable relief lack merit and should be denied. Plaintiff's demand for an injunction against Ditech should be denied because (1) Plaintiff lacks a statutory basis for an injunction under the Real Estate Settlement Procedures Act ("RESPA") and the Homeowners Protection Act ("HPA"); (2) she has failed to show irreparable harm; and (3)

1

injunctive relief is simply inappropriate for the actions that Plaintiff wishes to enjoin. Plaintiff's request for declaratory relief to file an amended complaint also misses the mark because it is moot based on previous orders of the Court. Lastly, Plaintiff is not entitled to relief from paying her mortgage payments to Ditech as set out under the plain terms of the Note and Security Deed.  For these reasons and others, the Court should deny Plaintiff's motion.

## I.   Summary of Facts and Procedural Posture

1.      On or around June 22, 2007, Plaintiff obtained a mortgage loan in the amount of $147,500.00 (the "Loan") from Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender ("Countrywide") to re-finance real property located at 8390 Emerald Pointe Lane, Gainesville, Georgia 30506 (the "Property"). (Doc. 1, ¶ 5). Plaintiff executed a Note ("Note") in favor of Countrywide promising to make payments as and when due under the Loan, along with a Security Deed (the "Security Deed"), wherein Plaintiff granted Countrywide and its successors and assigns a first-priority security interest in the Property.

2.      In 2008, Countrywide changed its name to BAC Home Loans Servicing, LP ("BAC"), which then became the servicer for the Loan. (*Id.*, ¶ 14).

3.      On April 26, 2010, Plaintiff entered into a "Home Affordable Modification Agreement" (the "HAMP Modification") with BAC. (*Id.*, ¶ 15).

4.      On or around June 1, 2013, servicing of the Loan was transferred to Green Tree Servicing, LLC. (*Id.*, ¶ 22). Effective August 31, 2015, Green Tree became known as Ditech, which continues to service the Loan.

5.      On August 29, 2015, Plaintiff contacted Ditech and requested confirmation that her private mortgage insurance ("PMI") would be automatically terminated on September 1, 2015. (Doc. 10-14). Plaintiff contended that under the terms of the HPA such a cancellation was due on September 1, 2015 because, on that date, she believed her mortgage balance would equal 78% of the Property's original value. (*Id.*).

6.      On September 3, 2015, Ditech responded to Plaintiff's August 29, 2015, letter and rejected Plaintiff's request to cancel her PMI as of September 1, 2015. (Doc. 10-15). Plaintiff's calculation of the ratio of her loan balance to the Property's value was incorrect, and PMI was not scheduled to be cancelled on September 1, 2015. (*See id.*). Using the correct ratio calculation, Ditech cancelled Plaintiff's PMI on June 1, 2016. (Doc. 10-9, p.10).

7.      In June 2016, Plaintiff began to send Ditech multiple "Qualified Written Requests" ("QWRs") as defined by RESPA, complaining about Ditech's refusal to cancel her PMI before June 1, 2016. (*See generally* Doc. 1). Plaintiff sent Ditech four QWRs from June – November 2016. (*See generally id.*). Those four

QWRs are the basis for Plaintiff's RESPA claims against Ditech. (*See generally id.*).

8.     Plaintiff sent her first QWR on June 16, 2016. (Doc. 1, ¶ 47). In this QWR, Plaintiff alleged that Ditech failed to timely mail her a "Recast Letter" as required by Fannie Mae guidelines. (*Id.*, ¶¶ 45 – 47). The Recast Letter is intended to inform mortgagors about the option to re-amortize the unpaid principal balance of their loans and thereby lower monthly mortgage payments. (*Id.*, ¶ 43). Plaintiff alleges that Ditech sent this letter approximately one month late. (*Id.*, ¶¶ 45 – 46). Plaintiff claims that Ditech's actions caused her to suffer monetary damages in the form of "additional interest that Plaintiff would not have otherwise had to pay if the Recast had been provided in a timely manner." (*Id.*, ¶ 104). Plaintiff also alleges emotional distress resulting from Ditech's actions. (*Id.*, ¶¶ 107, 110, 112, 115).

9.     Plaintiff sent her second QWR on August 10, 2016. (*Id.*, ¶ 61). In this QWR, Plaintiff requested additional information regarding a PMI refund check that she received in the amount of $26.71. (*Id.*). She contended that the amount of the refund check was incorrect and that Ditech failed to timely cancel her PMI. (*Id.*). She claims that these errors caused her monetary damages because she was forced to pay "additional PMI that she did not owe." (*Id.*, ¶ 121). She further alleges that she suffered emotional distress in the form of "anger, confusion and anxiety over when her PMI *should have* automatically cancelled on her loan and worry over

whether her loan was being serviced properly." (*Id.*).

10.     Plaintiff sent her third QWR on October 20, 2016. (*Id.*, ¶¶ 67 – 68). In this QWR, Plaintiff alleged that Ditech failed to properly note the date when she received her HAMP trial offer which ultimately led to the HAMP Modification. (*Id.*). This QWR also alleged that Ditech improperly and untimely calculated the re-amortization of her loan following the Recast Letter. (*Id.*, ¶ 70). She contended that Ditech's re-amortization utilized an incorrect principal balance and monthly mortgage payment. (*Id.*). Finally, Plaintiff complained that Ditech failed to process her request to cancel her escrow account, despite multiple requests to do so. (*Id.*, ¶ 84). Plaintiff alleges that Ditech's actions caused her monetary damages in the form of paying "additional interest that she otherwise would not [have] had to pay"; paying "additional PMI that she did not owe"; and "by not being considered for a waiver of her escrow requirement, and thus losing the ability to control her own funds." (*Id.*, ¶¶ 125, 130, 132, 140). She further alleges that Ditech's actions caused her emotional distress. (*Id.*, ¶¶ 125, 128, 130, 132, 137, 140).

11.     Plaintiff sent her fourth QWR on November 8, 2016. (*Id.*, ¶ 88). In this QWR, Plaintiff alleged that Ditech failed to timely re-amortize her loan following her request that Ditech do so on October 19, 2016. (*Id.*, ¶¶ 88 – 90). Plaintiff also requested transcripts of the telephone calls that she had with Ditech as well as

customized amortization schedules based on various dates chosen by Plaintiff. (*Id.*, ¶¶ 91 – 92). Plaintiff alleges that Ditech's actions caused her to suffer monetary damages as she "overpaid her PMI" and her "re-amortization was delayed by Ditech resulting in Plaintiff paying additional interest that she otherwise would not [have] had to pay." (*Id.*, ¶¶ 144, 151). She further alleges that Ditech's actions caused her emotional distress in the form of "anger, confusion and anxiety over when her loan *should have* been reamortized and worry over whether her loan was being serviced properly." (*Id.*, ¶¶ 144, 148). She lastly alleges that she has been damaged "by being denied access to evidence showing her efforts to seek Defendant's compliance with RESPA and its regulations." (*Id.*, ¶ 148).

12.    Plaintiff filed the present lawsuit against Ditech on September 5, 2017. (Doc. 1). Plaintiff alleges violations of the HPA based on Ditech's failure to timely cancel her PMI and violations of RESPA based on Ditech's allegedly inadequate responses to her four QWRs. (*See generally id.*).

13.    On December 18, 2017, Ditech filed a motion to dismiss Plaintiff's complaint. (Doc. 10).

14.    On April 26, 2018, the Magistrate Judge entered a non-final report and recommendation, granting in part and denying in part Ditech's Motion to Dismiss. (Doc. 24). Magistrate Judge King recommended that Ditech's motion should be

denied as to both Plaintiff's HPA claim and various portions of her RESPA claim related to Ditech's response to Plaintiff's June 16, 2016 QWR. (*Id.*, pp. 41 – 42). Magistrate Judge King recommended that the remaining portions of Plaintiff's complaint be dismissed. (*Id.*).

15.     On September 21, 2018, the District Judge accepted in part and rejected in part Magistrate Judge King's non-final report and recommendation. (Doc. 32). Judge Totenberg accepted the portions of the report and recommendation that denied Ditech's motion to dismiss, and denied the portions of the report and recommendation that granted Ditech's motion to dismiss as to Plaintiff's RESPA claims. (*Id.*, pp. 2, 32). As such, this Court denied Ditech's motion in full. (*See* Doc. 37, p. 1).  The Court also administratively closed the case and ordered the parties to mediation. (Doc. 32, p. 32).

16.     On October 3, 2018, Plaintiff filed a "Motion to Reconsider Reopening the Case and Motion for Leave to Amend and Supplement Complaint." (Doc. 33). In her motion, Plaintiff requested that the Court allow her leave to file an amended complaint to include additional claims against Ditech as well as claims against Fannie Mae. (*Id.*, pp. 7 – 8).

17.     On October 23, 2018, the Court denied Plaintiff's Motion to Reconsider. (Doc. 37). The Court also held that, should the mediation be

unsuccessful, Ditech would be given 14 days following the completion of mediation to file a full response to Plaintiff's request to file an amended complaint. (*Id.*, p. 3 n.3).

18.     On December 19, 2018, in an attempt to once again preempt the Court's mediation order, Plaintiff filed the present "Verified Motion for Preliminary Injunction, Declaratory and Equitable Relief." (Doc. 43). Plaintiff's motion largely restates the allegations from her original complaint and the amended complaint that she wishes to file. (Compare Doc. 43 to Doc. 1 and Doc. 33-1). Plaintiff's requested relief can be summarized as follows: (1) enjoining Ditech from transferring the servicing rights of the Loan, from foreclosing or accelerating the Loan, and from reporting any negative credit information (Doc. 43, pp. 11 – 12); (2) declaratory relief and judgment as to Plaintiff's proposed amended complaint "so that it may be granted and filed immediately upon the court" (*Id.*, pp. 9 – 10); and (3) equitable relief from her contractual obligations to make payments under the Security Deed and Note until the Court has considered the claims of Plaintiff's proposed amended complaint (*Id.*, p. 13).

19.     Despite having filed a lawsuit, Plaintiff continues to send correspondence to Ditech. Since this litigation has commenced, Ditech has received at least eight letters from Plaintiff. These letters, each purporting to be QWRs, have

contained over 100 purported notices of error and requests for information. These purported QWRs are largely duplicative of one another and contain numerous requests that are irrelevant to any allegation of actual servicing errors. Nonetheless, Ditech has invested significant time and resources to fully respond to each of these letters.

## II.    <u>Standard of Review</u>

To succeed on a motion for preliminary injunction, a plaintiff must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to each of the four prerequisites." *Id.* (quoting *McDonald's Corp.*, 147 F.3d 1301, 1306 (11th Cir. 1998)); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and a movant must clearly carry the burden of persuasion).

To succeed on a request for declaratory relief, a plaintiff must show that an actual case or controversy exists as required by Article III of the U.S. Constitution. *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia*, 868 F.3d 1248, 1268 (11th Cir. 2017). "For a controversy to exist, the facts alleged, under all the circumstances must show there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Crespo v. Coldwell Banker Mortg.*, 599 Fed. App'x. 868, 874 (11th Cir. 2014) (quoting *Atl. Gas Light Co. v. Aetna Cas. & Sur. Co.,* 68 F.3d 409, 414 (11th Cir.1995)). "[A] plaintiff seeking only . . . declaratory relief must prove not only an injury, but also a 'real and immediate threat' of future injury in order to satisfy the 'injury in fact' requirement." *In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*, 113-CV-4217-TWT, 2014 WL 2738680, at *2 (N.D. Ga. June 17, 2014) (internal quotations omitted).

Finally, "Under Georgia law, in bringing a claim for equitable relief, "[she] who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." *Horne v. Harbour Portfolio VI, LP*, 304 F. Supp. 3d 1332, 1346 (N.D. Ga. 2018) (quoting O.C.G.A. § 23–1–10).

### III.   <u>Argument</u>

## A.    Plaintiff is Not Entitled to Injunctive Relief

Plaintiff seeks to enjoin Ditech from transferring servicing of the Loan, from conducting a foreclosure or accelerating the Loan, and from reporting any negative credit information concerning Plaintiff. (Doc. 43, pp. 10 – 11). Plaintiff's request for injunctive relief fails for multiple reasons. First, Plaintiff does not have a right to an injunction under either RESPA or the HPA. Second, Plaintiff's lawsuit is merely seeking monetary damages, thus she has an adequate remedy at law and cannot show irreparable harm. And third, the actions that Plaintiff is seeking to enjoin are not appropriate items for an injunction. Multiple courts within the Eleventh Circuit, including this Court, have rejected similar requests, and the Court should rule similarly here.

### 1.    RESPA and the HPA Do Not Permit Injunctive Relief

"[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance. 'There is no such thing as a suit for a traditional injunction in the abstract.'" *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)). Given that Plaintiff's complaint only asserts violations of RESPA and the HPA, any right to an injunction must be based on one of these two statutes. *See id.*

RESPA explicitly does not permit a private individual to sue for an injunction. "Although RESPA provides a basis for certain government officers to seek injunctions, 12 U.S.C. § 2607(d)(4), only monetary relief is available for private individuals alleging RESPA violations, 12 U.S.C. § 2605(f)." *Nembhard v. Barrett Daffin Frappier Levine & Block, LLP*, 1:17-CV-00746-WSD, 2017 WL 894449, at *2 (N.D. Ga. Mar. 7, 2017); *Lindsay v. Selene Fin. LP*, 116CV03323RWSRGV, 2017 WL 8186853, at *4 (N.D. Ga. Feb. 17, 2017), *report and recommendation adopted*, 1:16-CV-3323-RWS, 2017 WL 8219031 (N.D. Ga. Mar. 21, 2017) (collecting cases). Because RESPA does not permit injunctive relief, Plaintiff is barred from seeking an injunction under this statue. *See id.*

Likewise, the HPA does not provide for injunctive relief as a remedy. Under the "Civil Liability" section of the HPA, actual damages, statutory damages, costs, and attorney's fees are collectible. 12 U.S.C. § 4907. The statute is silent as to injunctions. *See id.* As other courts in this District have held when interpreting consumer protection statutes, such as RESPA, "[I]f Congress intended to allow equitable relief for private individuals . . . it would have done so expressly." *E.g.*, *Howard v. Mortgage Elec. Registration Sys., Inc.*, 1:10-CV-1630-WSD, 2010 WL 11549926, at *2 (N.D. Ga. Oct. 15, 2010). Further, the undersigned's research has not uncovered any examples of a federal court issuing an injunction under the HPA.

Accordingly, based on the text of the HPA, canons of statutory interpretation, and a lack of precedent, the HPA does not authorize injunctive relief. The Court should deny Plaintiff's demand for an injunction for lack of a suitable cause of action.

### 2.      Plaintiff Has an Adequate Remedy at Law

A preliminary injunction may only issue where the requesting party demonstrates that an irreparable injury will result if the injunction is not granted. *Consorcio Barr, S.A.*, 320 F.3d at 1210. Irreparable injury occurs where there is no adequate remedy at law. *Reynolds v. Roberts*, 207 F.3d 1288, 1299 (11th Cir. 2000). Thus, "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Huntley v. Chicago Bd. of Options Exch.*, 1:15-CV-1945-AT, 2015 WL 12698295, at *1 (N.D. Ga. June 8, 2015) (quoting *N.e. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990)). Further, "[T]he asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Cathedral Art Metal Co. v. Divinity Boutique, LLC*, 1:18-CV-141-WSD, 2018 WL 388588, at *2 (N.D. Ga. Jan. 12, 2018) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

Here, Plaintiff solely seeks monetary damages from Ditech for which she has an adequate remedy at law. For her claim under the HPA, Plaintiff alleges that she was forced to pay additional insurance premiums because Ditech failed to cancel her

PMI at earlier date. (Doc. 1, ¶¶ 27 – 32). Likewise, under her various RESPA claims, she seeks monetary damages for additional interest and PMI that she was allegedly forced to pay, as well as losing the ability to control her own funds by not being granted a waiver of her escrow account. (*Id.*, ¶¶ 104, 121, 125, 130, 132, 140, 144, 151). She also alleges emotional distress. (*Id.*, ¶¶ 107, 110, 112, 115, 121, 125, 128, 130, 132, 137, 140, 144, 148). All of these damages are capable of being redressed through a monetary award following a trial on the merits. In other words, Plaintiff cannot show how any injury she suffered "cannot be undone through monetary remedies." *Huntley*, 2015 WL 12698295, at *1 (quoting *City of Jacksonville*, 896 F.2d at 1285). Indeed, the very remedies she seeks are monetary in nature. (*See, e.g.*, Doc. 1, ¶¶ 104, 121, 125, 130, 132, 140, 144, 151). Accordingly, an injunction is unwarranted here where a final judgment on the merits would make Plaintiff whole.

Plaintiff's attempts to show that she lacks an adequate remedy at law are unavailing. She argues that her situation is "precarious at best" as she may lose her ability to collect an award of damages given the possibility that Ditech might declare bankruptcy or transfer the servicing rights of the Loan to another entity. (Doc. 43, p. 12). She states that if either of these outcomes occurs, she "will essentially have to start over trying to correct errors or gather information from a new servicer." (*Id.*). These allegations are speculative at best and do not represent "actual and imminent"

harm. *See Cathedral Art Metal Co.*, 2018 WL 388588, at *2 (quoting *Siegel*, 234 F.3d at 1176). She has provided no evidence that Ditech intends to transfer the servicing of her Loan. (*See generally* Doc. 43). And as for a potential bankruptcy filing, the Third Quarter report she cites simply states that Ditech is "*considering* a range of *potential* transactions including, among other things, a sale of the Company, a sale of all or a portion of the Company's assets, and/or a recapitalization of the Company." (*Id.*, pp. 1- 2) (emphasis added). Because Plaintiff's alleged injuries can be resolved through an adequate remedy at law, and she has failed to show any irreparable harm that is actual and imminent, her request for injunctive relief fails.

### 3.    An Injunction is Improper to Address Plaintiff's Requested Relief

Beyond the issues identified above, Plaintiff's request for an injunction is improper on its face. She asks the Court to enjoin Ditech from (1) transferring servicing of the Loan; (2) foreclosing or accelerating the Loan; and (3) reporting negative credit information to the major credit bureaus. (Doc. 43, pp. 10 – 11). None of these actions are proper subject matter for an injunction.

Concerning the service transfer, courts within the Eleventh Circuit have rejected these types of requests from plaintiffs. *E.g.*, *Caplinger v. Ocwen Loan Servicing, LLC*, 8:14-CV-3214-T-35MAP, 2015 WL 12938920, (M.D. Fla. Dec. 29, 2015). In *Caplinger*, the plaintiff asked the court to enjoin the defendant mortgage

servicer "from making any future transfers of loan servicing or attempts to transfer loan servicing of his mortgage loan account." *Id.* at *1. The plaintiff contended that if a service transfer occurred, he would "be '*irreversibly*' injured . . . because he [would] have to endure a new round of illegitimate collection activities" from the new servicer. *Id.* at *2. The *Caplinger* Court rejected the plaintiff's request, reasoning that future harm resulting from the transfer of the mortgage to another servicer was speculative. *Id.* The court further noted that any injury the plaintiff might suffer could be addressed through monetary or statutory damages. *Id.* The same reasoning applies here. Plaintiff's contention that a service transfer would harm her because she would "essentially have to start over trying to correct errors or gather information from a new servicer" is speculative at best. (*See* Doc. 43, p. 12). Further, a service transfer would not prevent her from being made whole through actual or statutory damages allowed under the HPA and RESPA. *See* 12 U.S.C. § 4907 and 12 U.S.C. § 2605(f)(1). Accordingly, Plaintiff cannot meet her high burden to show that Ditech should be enjoined from transferring servicing of the Loan.

Plaintiff's request to enjoin acceleration or foreclosure similarly fails. As an initial matter, any harm that Plaintiff could identify from these actions is remote and speculative. Plaintiff does not allege that Ditech considers Plaintiff's Loan to be in default or is presently attempting to foreclose. (*See generally* Doc. 43). Indeed, any

harm that could occur in this arena would be of Plaintiff's own making as she has stated her intention to stop making her mortgage payments to Ditech. (*See id.*, p. 17). Further, Eleventh Circuit courts, including this Court, have rejected requests for injunctions similar to Plaintiff's. For example, in *Phillips v. Mortgage Elec. Registration Sys., Inc.*, 5:09-CV-2507-TMP, 2013 WL 1498956, (N.D. Ala. Apr. 5, 2013), the court held that a mortgage servicer's alleged past errors did not entitle the plaintiff "to a *prospective* injunction to prevent the proper party from beginning the acceleration and foreclosure process anew." *Id.* at *15. And in *Williamson v. Bank of Am., N.A.*, 1:11-CV-1161-AT, 2013 WL 1224404 (N.D. Ga. Mar. 8, 2013), this Court rejected a plaintiff's attempt to enjoin a nonjudicial foreclosure and held that a nonjudicial foreclosure could only be enjoined where "the authority to foreclose is in question" (*e.g.* where the foreclosing entity did not possess the promissory note or was not an assignee of the mortgage). *Id.* at *8 (citing Georgia Supreme Court cases). The *Williamson* plaintiff failed to present any evidence to make such a challenge; therefore, the Court rejected Plaintiff's request for injunctive relief. *Id.* at *9. Here, Plaintiff may not cite Ditech's alleged past servicing errors to prevent it from pursuing acceleration or foreclosure in the future. *See Phillips*, 2013 WL 1498956 at * 15. Moreover, Plaintiff has made no challenge to Ditech's authority or standing to foreclose, which is required to enjoin a nonjudicial foreclosure. *See*

*Williamson*, 2013 WL 1224404 at *8 – 9; (*see also* Docs. 1 & 43). Accordingly, Plaintiff has no grounds to prevail on an injunction against the acceleration or foreclosure of the Loan.

Finally, Plaintiff lacks any basis to enjoin the reporting of negative credit information. First, Plaintiff has failed to allege that Ditech is currently reporting any derogatory credit information or that such reporting is imminent. (*See generally* Doc. 43). Second, she lacks a cause of action to support injunctive relief. As stated above, a request for injunctive relief cannot stand in the abstract, but must be authorized by a specific cause of action. *U.S. Army Corps of Engineers*, 424 F.3d at 1127 (quoting *Klay*, 376 F.3d at 1097). Causes of action related to credit reporting are governed by the Fair Credit Reporting Act ("FCRA"), which preempts all relevant state law claims. *Clark v. PNC Bank, N.A.*, 1:13-CV-1305-WSD, 2014 WL 359932, at *5 n.15 (N.D. Ga. Feb. 3, 2014) (quoting 15 U.S.C. § 1681t(b)(1)(F)). The FCRA, even if Plaintiff had pleaded it, does not authorize injunctive relief as held by multiple courts within the Eleventh Circuit. *E.g.*, *Daniels v. Experian Info. Sols., Inc.*, CV 109-017, 2009 WL 1811548, at *4 (S.D. Ga. June 24, 2009) (holding "The majority of federal district courts, including a federal district court in this circuit, to consider the issue have also found that private plaintiffs have no right to injunctive or declaratory relief under the FCRA."). As such, Plaintiff's request to enjoin Ditech

from reporting future negative credit information should be denied.

**B.      The Court Has Already Rejected Plaintiff's Claim for Declaratory Relief**

In her request for declaratory relief, Plaintiff "respectfully request[s] the Court for declaratory relief and judgment as to [her] [amended complaint] so that it may be granted and filed immediately upon the court." (Doc. 43, pp. 9 – 10). Such a request is moot because the Court has already made a ruling on this issue. Moreover, even if the Court had not already ruled, Plaintiff has provided nothing to show that she is entitled to declaratory relief.

After ruling on Ditech's motion to dismiss, the Court ordered the parties to mediation and stayed the case. (Doc. 32, p. 32). Plaintiff challenged this order and, on October 3, 2018, filed a "Motion to Reconsider Reopening the Case and Motion for Leave to Amend and Supplement Complaint." (Doc. 33). In her motion, Plaintiff requested that the Court allow her leave to file an amended complaint to include additional claims against Ditech as well as claims against Fannie Mae. (*Id.*, pp. 7 – 8). The Court considered this motion and denied it. (Doc. 37). As part of that denial, the Court explicitly held that, in the event that mediation was unsuccessful, Ditech would have 14 days to file a full response to Plaintiff's request to file an amended complaint. (*Id.*, p. 3 n.3). Plaintiff, apparently dissatisfied with this ruling, is once again demanding that the Court accept her amended complaint without hearing from

Ditech. (*See* Doc. 43, pp. 9 – 10).

First, the Court should reject this request as moot because it already clearly ruled on this issue. (Doc. 37, p. 3 n.3). Second, Plaintiff's demand is inappropriate for declaratory relief because it does not implicate a "'real and immediate threat' of future injury." *In re Atlas Roofing Corp.*, 2014 WL 2738680, at *2 (quoting *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004)). The Court has not denied Plaintiff's request to file an amended complaint. (*See* Doc. 37). The Court simply held that, before it would issue a ruling, Ditech would have an opportunity to be heard. (Doc. 37, p. 3 n.3). Plaintiff cannot possibly identify a real and immediate injury arising from the Court's briefing schedule. Therefore, the Court should deny Plaintiff's request for declaratory relief and reaffirm its earlier ruling.

## C.   Equity Will Not Permit Plaintiff to Avoid Her Contractual Obligations

Due to the errors that Plaintiff has allegedly identified with Ditech's servicing, Plaintiff asks the Court to excuse her from continuing to make her mortgage payments to Ditech. (Doc. 43, p. 17). She specifically "seeks Equitable Relief from my contractual obligations under the Security Deed and Note until such time [as] this court has considered all my claims including those for breach of contract within my [amended complaint]." (*Id.*). She states her intention to retain her mortgage payments in a separate escrow account or make these payments into a registry of the

Court. (*Id.*). The Court should deny Plaintiff's request to circumvent her contractual obligations.

Plaintiff is effectively requesting the Court to allow her to breach the Note and Security Deed while she, in turn, asserts a breach of contract against Ditech. (*Id.*). Plaintiff has an affirmative obligation to pay monthly payments under the Note and Security Deed that she executed. (Doc. 10-2, ¶ 3; Doc. 10-3, ¶ 1).  Plaintiff has no contractual basis  to stop having to make payments on the Loan simply because she is unsatisfied with Ditech's responses to her QWRs. Equity does not permit Plaintiff to avoid her payment obligations under the Note and Security Deed while retaining the benefit of continuing to live in the Property. (*See* Doc. 43, p. 17). *See Heath v. Fed. Nat'l Mortgage Ass'n*, 4:12-CV-00262-HLM, 2013 WL 12099647, at *3 (N.D. Ga. Jan. 11, 2013).  For these reasons, Plaintiff's request for equitable relief does not pass muster and should be denied.

## IV.   Conclusion

As shown above, Plaintiff has failed to substantiate her request for injunctive, declaratory, or equitable relief. The Court should deny Plaintiff's motion and allow the Parties to proceed to mediation per the Court's previous orders. (Docs. 32 & 37).

Respectfully submitted this 2nd day of January, 2019.

/s/Keith S. Anderson
Keith S. Anderson
Georgia Bar No. 136246
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Facsimile: (205) 521-8800
kanderson@bradley.com

ATTORNEY FOR DITECH FINANCIAL, LLC

## Certification of Compliance

I hereby certify that the foregoing document has been prepared in 14-point

Times New Roman font and complies with LR 5.1(B).

This 2nd day of January, 2019.

/s/Keith S. Anderson
Keith S. Anderson

## Certificate of Service

I hereby certify that I have this date electronically filed the foregoing **OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, DECLARATORY AND EQUITABLE RELIEF** by the CM/ECF online filing system with U.S. District Court for the Northern District of Georgia and that I have on January 2, 2019, also served the foregoing via U.S. Mail on the following:

Traci St. Claire
8390 Emerald Pointe Lane
Gainesville, GA 30506


/s/Keith S. Anderson
Keith S. Anderson